TURNBULL, MARTIN & Co. *v.* EIGHTY-SEVEN BLOCKS OF MARBLE.

*(District Court, E. D. Louisiana.* March 24, 1881.)

1. BILL OF LADING—UNLOADING CARGO.

The ship-owners can recover from the consignees the expense incurred by them in unloading the vessel, where the bill of lading provides that the cargo should be delivered from the ship's deck, when the ship's responsibility should cease.

In Admiralty.

*E. W. Huntington,* for libellants.

*T. C. W. Ellis* and *Emmet D. Craig,* for claimants.

BILLINGS, D. J. The amount claimed by the libellants in this cause is made up of three items, viz.: freight, $1,476.97; demurrage, at $150 per day, $450; and expenses for labor, $445.50. It is admitted by the claimants that the amount claimed for freight is due, and that sum has been tendered and deposited in the registry of the court. As to the second item, demurrage, it does not appear by preponderance of evidence that the delay in unloading was caused by the fault of the consignees. The claim for this item is therefore rejected. As to the third item—$445.50 expenses in unloading the marble. This expense was incurred in transporting the marble from the ship over the wharf to the firm' land or shore. It is not

questioned that the expense was incurred, and for this purpose. The only question is, upon whom must it fall? This is determined by an examination of the terms of the bill of lading, which contains two clauses which have been insisted upon in the argument as having a bearing upon this issue. It is provided that the marble is "to be delivered from the ship's deck, when the ship's responsibility shall cease;" and a further proviso that the "landing is to be designated by consignees, provided the steamer can approach safely and will lay afloat." This last clause has no reference to the manner of delivery of the cargo, as to where it is to be received by the consignees. It merely gives the consignees the right to select the place of landing, and leaves the vital claim of the contract as to delivery unrestricted and unaffected.

Words cannot have a clearer or more unambiguous meaning than this clause: "To be delivered from the ship's deck, when the ship's responsibility shall cease." There can be no evidence as to custom in such a case. The delivery, and, consequently, the receipt of the goods, was to be from the ship's deck; whatever the appliances were, to be constructed or used, or expenses incurred, to effect the movement of the marble after it left the ship's deck, were intended to be at the cost of the consignees; and, as if to place the stipulation beyond all possible misconstruction, it is added,—*i. e.*, when the cargo leaves the deck,—the ship's responsibility shall cease; for it can hardly be contended that the ship's expenses should continue after its responsibility had, by the terms of the contract, ceased.

This clause was inserted, most likely, on account of the great weight of the parcels or pieces of marble, and to place upon the consignees the duty of all preparations for carrying the marble beyond the wharves—which are structures insufficient to sustain such weight —as well as all cost of making the transfer.

This item is therefore allowed, and the judgment will be for the libellants for the amount of the first and last items claimed, with costs.