BENJAMIN WHITWORTH et al., Appellants, *v.* THE ERIE RAILWAY COMPANY, Respondent.

Plaintiff shipped at Memphis various lots of cotton for transportation to Liverpool, under through contracts with certain dispatch companies and steamboat companies, the former contracting to carry the cotton to Jersey City.  The bills of lading contained clauses to the effect that the respective companies " and their connections " should not be liable for loss

or damage by fire to the property while in transit, or while in deposit or places of transhipment, or at depots or landings at points of delivery. Defendant's road formed part of a continuous line of railroad from Memphis to New York, and as intermediate carrier it received the cotton for transportation over its line, and carried it to Jersey City, where a portion of it then in its freight-house was destroyed by fire. Defendant was not a member of either of the dispatch companies, and the latter were not owners of any of the railroads over which the cotton was transported, but used them in the performance of their contracts.    In an action to recover for the loss, *held*, that defendant was entitled to the benefit of the restrictive clauses in the bills of lading, and was not liable unless the fire resulted from its negligence ; that it was incumbent on the plaintiffs, in order to avoid the effects of the exemption, to show that the fire was the result of defendant's negligence, or that the loss resulted from some breach of duty which contributed to the loss.

It appeared that the fire was first discovered in the roof of the defendant's passenger depot. No evidence was given as to its origin, nor did it appear that any of defendant's employes had or might have had any knowledge on that subject. There was a navigable slip eighty feet wide between the passenger and the freight depot. The latter was of wood of like character with the buildings in ordinary use for like purposes at tnat point. There was a high wind which carried the flames and cinders and so communicated the fire to the freight-house. *Held* that the evidence failed to show any negligence on the part of defendant; and that the trial court was justified in refusing to submit that question to the jury.

It appeared that the way-bills of the dispatch companies consigned the property to their agents in New York. The uniform course of business between the defendant and those companies had been for defendant, on arrival of property, to give notice thereof to the agent named in the way-bill, whose duty it then was to obtain a permit from the steamship company for delivery to the latter, and to deliver the permit to defendant ; on receipt thereof the latter would deliver the goods on lighters to the proper vessel. On arrival of the cotton in question, prompt notice was given to the proper agent, but permits were not obtained, and defendant, although persistently urging said agent to obtain the permits, was unable to get rid of the cotton. *Held*, that assuming there was an unreasonable detention of the cotton, defendant was not responsible for the delay in delivery ; that it fully discharged its duty when it gave prompt notice of arrival, and held itself ready to deliver as soon as the permits were obtained.

(Argued December 13, 1881 ; decided January 17, 1882.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, in favor of defendant,

entered upon an order made May 20, 1879, which overruled plaintiffs' exceptions, and directed judgment on an order dismissing plaintiffs' complaint on trial. (Reported below, 13 J. & S. 6U2.)

This action was brought against defendant to recover for the loss of four hundred and twenty-eight bales of cotton, which had been shipped at Memphis for Liverpool, and had been transported over defendant's road, and were destroyed by fire while in its freight-house at Jersey City.

The facts are sufficiently stated in the opinion.

*Henry J. Scudder* for appellants. The contract of the defendant was satisfied by a delivery to the steamship company and nothing less or different. (*Sherman* v. *Hudson R. R. R. Co.*, 64 N. Y. 259; *Goold* v. *Chapin*, 20 id. 259; *McDonald* v. *West. R. R. Co.*, 34 id. 497.) Defendant owed a duty to the plaintiffs under the bill of lading to tender the property to the steamship company at its wharf, and upon a refusal on its part to receive it, to do such acts as would preserve the rights of the plaintiff. (*Lawson* v. *Holland*, 59 N. Y. 611; *Mills* v. *N. Y. C. R. R. Co.*, 45 id. 612; *Lockwood* v. *Erie Railway Co.*, 28 Ohio St.; *Weed* v. *Barney*, 46 N. Y. 348; *Bostwick* v. *Balt. & O. R. R. Co.*, 45 id. 717; *Michaels* v. *N. Y. C. R. R. Co.*, 30 id. 564; *Rawson* v. *Holland*, 59 id. 619.) The contract does not protect the defendant against its own negligence, or that of its servants. (*Mynard* v. *Syracuse, etc., R. R. Co.*, 71 N. Y. 180; *Lamb* v. *C. & A. R. R. Co.*, 46 id. 271; *Cochran* v. *Dinsmore*, 49 id. 249; *Cleveland* v. *N. J. Stmbt. Co.*, 68 id. 310; *Russell Manuf. Co.* v. *N. H. Stmbt. Co.*, 50 id. 126; *Barron* v. *Eldridge*, 100 Mass. 454; *Faucett* v. *Nichols*, 64 N. Y. 382; *Hays* v. *Miller*, 70 id. 116.) Nothing prevented the defendant from making, before the fire, such disposition of the cotton that was burned as was made of that portion loaded on the "Sampson," and the question whether the defendant was guilty of negligence in delaying delivery should have been submitted to the jury. (*Condict et al.* v. *Grand Trunk R. R. Co.*, 54 N. Y.

500; *Rawson* v. *Holland*, 59 id. 619; *Read* v. *Spaulding*, 30 id. 630.)

*Joseph Larocque* for respondent. · A common carrier may, by special contract, except risks from fire, or any other cause, from his undertaking, and in such case he is not liable for loss by the excepted risks. (*Parsons* v. *Monteath*, 13 Barb. 353; *Moore* v. *Evans*, 14 id. 524; *Door* v. *N. J. Steam Nav. Co.*, 11 N. Y. 485; *Mercantile Mut. Ins. Co.* v. *Calebs*, 20 id. 173, 176.) A contract made by one carrier for the transportation of goods over his own and connecting lines, adopted and acted upon by the other carriers, inures to the benefit of all thus ratifying it, and performing service under it. In such cases the contract has respect to, and provides for, the services of the carriers upon the connecting routes. (*Babcock* v. *L. S. & M. S. Ry. Co.*, 49 N. Y. 491, 497; *Maghee* v. *C. & A. R. & T. Co.*, 45 id. 514; *Lamb* v. *The Same Company*, 46 id. 272.) Irrespective of the express provisions of the transportation contracts, exonerating the carriers from liability from loss by fire, the defendant, at the time of the loss in question, would have only been liable on the evidence as ordinary bailees, and not as common carriers. (*Garside* v. *The Trent & M. N. Co.*, 4 Term R. 581; *Lamb.* v. *The Western R. R. Corp.*, 89 Mass. 98; *Thomas* v. *The B. & P. R. R. Corp.*, 51 id. 472.) The burden rested upon the plaintiffs to show, by competent evidence, as a condition precedent to any recovery, that the destruction of the cotton in question by fire was the result of negligence on the part of the defendant. (*Lamb* v. *Camden & A. R. R. & T. Co.*, 46 N. Y. 271; *Caldwell* v. *N. J. Stmbt. Co.*, 47 id. 282, 292; *Cochran* v. *Dinsmore*, 49 id. 252; *Stokes* v. *The People*, 53 id. 164, 180.) The plaintiffs having rested without offering any evidence tending to show that the fire, by which the cotton not delivered was destroyed, resulted from negligence on the part of the defendant, the court properly directed a dismissal of the complaint, and the plaintiffs' exception to such direction was not well taken. (*Deyo* v. *The N. Y. C. R. R. Co.*, 34 N. Y. 9, 13; *Stever* v. *Oswego & S. R. R.*

*Co.*, 18 id. 422; *Wilds* v. *Hudson R. R. Co.*, 24 id. 430; 29 id. 315; *Toomey* v. *London & B. Ry. Co.*, 91 Com. Law, 146; *Improvement Co.* v. *Munson*, 14 Wall. 448; *Pleasants* v. *Fant*, 22 id. 116; *Cotton* v. *Wood*, 98 Com. Law, 566.)

ANDREWS, Ch. J.   The bills of lading, of the Erie and Pacific Dispatch, and the Great Western Dispatch Company, under which the cotton was shipped, contain provisions, limiting the liability of the carriers, and among others, a provision that the respective companies, and their connections, should not be liable "for loss or damage to the property by fire, while in transit, or while in deposit or places of transshipment, or at depots or landings at any point of delivery."

The bills of lading were through contracts; that is, contracts for the carriage of the cotton from Memphis, the place of shipment, to Liverpool, England, at a fixed rate for the whole distance. The Oceanic Steam Navigation Company, was a party to the bills of lading of the Erie and Pacific Dispatch, and the National Steamship Company, to those of the Great Western Dispatch Company. But the undertakings of the respective carriers, although contained in a single instrument, were distinct and several, and not joint. The bills of lading of the Erie and Pacific Dispatch, declared that its contract was executed and accomplished, and that its liability as common carrier should terminate on the delivery of the property to the steamship of the Oceanic Steam Navigation Company, at the White Star wharf, Jersey City, when the liability of the steamship company should commence, and not before. Following this provision, is the contract of the steamship company, for the ocean carriage to Liverpool. The bills of lading of the Great Western Dispatch Company are of similar purport, the only difference being in the name of the steamship company, joining in the contract.

In February or March, 1873, the plaintiffs delivered to the respective dispatch companies, at Memphis, under the bills of lading referred to, in all, 1,090 bales of cotton, consigned to

Liverpool, deliverable to the order of the shippers. The defendant, in the course of the transit, received this cotton and carried it to Jersey City, the eastern terminus of its line. On the 21st of March, 1873, four hundred and twenty-eight bales of the cotton, then in the freight-house of the defendant, were destroyed by fire. The question presented is, whether the defendant is liable for its value? It is, we think, a clear proposition, that the defendant is entitled to the benefit of the restrictive clauses in the bills of lading. They are made applicable, by express language, to the company using them, *and its connections.* The defendant's road formed, with other railways, a continuous line of railroad, between Memphis and New York. It does not appear that the defendant was a member of either of the dispatch companies, or that in respect to the carriage of the cotton, it occupied any other relation to those companies, than that of intermediate carrier, receiving the property for transportation over its line. The dispatch companies were not owners of the railroads over which the cotton was transported, but used the several lines of road between Memphis and New York, in the performance of their contracts with the plaintiffs. It may be supposed, that special and more favorable arrangements were made with the several roads for the carriage of property, under the bills of lading of the dispatch companies, in view of the limited liability therein. However this may have been, the carriage of the cotton by the defendant in aid of the contracts of the dispatch companies, made it one of the *connections,* mentioned in the bills of lading, and the contract of exemption inured to the defendant's benefit, and the defendant is exonerated from liability for the loss occasioned by the fire, unless the fire resulted from its negligence. (*Babcock* v. *The L. S. & M. S. Railway Co.,* 49 N. Y. 491, and cases cited.)

The plaintiff asked to have the question of the defendant's negligence submitted to the jury, but the judge denied the request, and granted a nonsuit. The plaintiff's counsel insists that the nonsuit was erroneous, for two reasons: *first,* that, it having been shown that the fire originated on the defend-

ant's premises, in the roof of the passenger depot, from which it communicated to the freight-house where the cotton was stored, and no explanation having been given of the origin of the fire, the presumption of negligence attached, and the question should have been submitted to the jury; *second*, that the evidence tended to show an unreasonable detention of the cotton by the defendant after its arrival, and a violation of its duty to make prompt delivery to the steamship companies, and that, except for such detention and non-delivery, the cotton would not have been in the freight-house at the time of the fire. (See *Read* v. *Spaulding*, 30 N. Y. 630; *Rawson* v. *Holland*, 59 id. 619.)

The bills of lading contain a general exemption from liability for loss by fire, and the loss having occurred from this cause, it was incumbent on the plaintiff, in order to avoid the effect of the exemption, to show that the fire was the result of the defendant's negligence, or that the loss resulted from some breach of the defendant's duty. The burden was upon the plaintiff to show facts taking the case out of the operation of the exemption clause. (*Lamb* v. *Camden & Amboy R. R. & T. Co.*, 46 N. Y. 271; *Caldwell* v. *The New Jersey Steamboat Co.*, 47 id. 282; *Cochran* v. *Dinsmore*, 49 id. 252.) We think there was no evidence tending to show negligence on the part of the defendant, in respect to the origin of the fire. It was first discovered about mid-day, in the roof of the depot, which was situated about one hundred feet east of the freight-house, where the cotton was stored. The depot had been in use twelve years. There was no evidence how the fire originated, nor did it appear that there were any persons in the employment of the defendant who had, or might have had, any knowledge upon the subject. There was a navigable slip, eighty feet wide, between the depot and the freight-house in which the cotton was stored, and on the east side of the slip, was another freight-house adjoining the depot. The freight-houses were of wood, and of the same character with the buildings in ordinary use by transportation companies for like purposes, at this point. There was a high wind, which

carried the flames and cinders in the direction of, and communicated the fire to, the freight-houses. There was no omission of diligence in the efforts to save the freight-houses and property, after the fire was discovered. Accidental fires, occurring without negligence, are frequent. The occurrence of a fire does not alone justify the inference of negligence. In the absence of all explanation of the origin of the fire, or of evidence tending to show that it was in the power of the defendant to have made such explanation, or that, by the exercise of reasonable care, the fire would not have occurred, no presumption of negligence was raised so as to justify the submission of the question to the jury.

The claim that there was an unreasonable detention of the cotton by the defendant, after arrival, and a failure of prompt delivery, is not supported by the evidence. The general duty of an intermediate carrier of property involves an obligation on his part to deliver the property, at the end of his route, to the succeeding carrier, within a reasonable time after its arrival. (*Rawson* v. *Holland,* 59 N. Y. 619.) The cotton in question was accompanied by way-bills. The way-bills of the Erie and Pacific Dispatch, contained the words, "Consigned to Liverpool, England, care of Samuel Debow, New York." Debow, was the president, and manager of the Erie and Pacific Dispatch. In like manner, the way-bills of the Great Western Dispatch Company, consigned the property to the care of its agent in New York. The uniform course of business between the defendant and the dispatch companies, had been for the defendant, on arrival of property carried under bills of lading, to give notice to the proper agent named in the way-bill, of such arrival. It then became the duty of the intermediate consignee or agent, to obtain a permit from the steamship company, for the delivery of the property to the steamship, and deliver the permit to the defendant, and on such permit being obtained, it was the duty of the defendant's agent to deliver the property on lighters, to the proper vessel. On arrival of the cotton in question, prompt notice was given by the defendant, in accordance with the custom. But by

reason, either of the neglect of the agents of the dispatch companies to obtain the proper permits, or the inability of the steamship companies to receive the property, the defendant was unable to get rid of the cotton, although its agents were persistently urging the agents of the dispatch companies, to obtain the proper permits for its removal. Upon these facts, we are of opinion, that the defendant fully discharged its duty, and is not chargeable with any negligence in respect to the detention of the cotton. By the course of business, the agents of the dispatch companies assumed the duty of obtaining the proper permits, and the cotton being consigned to their care, the defendant was justified in acting under their directions, and in accordance with the course of business they had established. The defendant, made no express contract with the plaintiff, to deliver alongside the vessel. Its immediate principals, were the dispatch companies, and it fully discharged its duty, when it gave prompt notice of arrival, and requested the agent to obtain the proper permits, and held itself in readiness to deliver the cotton as soon as the permits were obtained. Assuming that there was an unreasonable detention of the cotton at the freight-house of the defendant, it was not its fault, and did not deprive the company of the benefit of the exemption in the bills of lading. The plaintiff, must be deemed to have authorized the defendant, to deal with the property according to the custom, and under the direction of the dispatch companies, to whose care it was consigned, at New York. (See *Van Santvoord* v. *St. John*, 6 Hill, 157; *Mills* v. *The Michigan Central R. R. Co.*, 45 N. Y. 626.)

The judgment should be affirmed.

All concur.

Judgment affirmed.