---

## THE KATE.[*]

(District Court, E. D. Pennsylvania. June 27, 1882.)

CARRIAGE OF GOODS BY WATER—DUTY OF CONSIGNEE TO REMOVE GOODS FROM WHARF—WHAT IS REASONABLE NOTICE.

A bill of lading stipulated that the consignee should take the goods from the ship immediately she was ready to discharge. The ship arrived at the dock on Saturday, and on the same day, between 11 and 12 o'clock in the forenoon, notice was sent to the consignee that she would discharge on Monday. The cargo was discharged on Monday, and part of it placed on the pier uncovered, although there was a shed on the pier at the end furthest from the vessel.

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

About 3 o'clock on Monday it commenced to rain, and the wool was damaged. *Held*, that the notice to the consignee was sufficient, and that as the damage was caused by his failure to remove or protect the goods, the ship was not liable therefor.

Libel by Seville Schofield against the steam-ship Kate to recover damages for injuries to wool shipped on the steam-ship. The facts were as follows:

The wool was shipped at Odessa, consigned to Brown Bros. & Co., at Philadelphia, who afterwards assigned the bill of lading to libellant. The bill of lading contained the following clause: " The goods to be taken from the ship by the consignee immediately the vessel is ready to discharge, any custom of the port to the contrary notwithstanding, or otherwise they will be landed or , put into craft by the master or ship's agent at the merchant's risk and expense. The ship's responsibility to cease immediately the goods are discharged from the ship's deck." On Friday, September 10, 1880, the steamship arrived at Philadelphia, and the next day was entered at the customhouse and docked. By the regulations of the custom-house a cargo cannot be discharged upon general order until 48 hours after entry, but a special license to discharge earlier may be obtained. Such a license was obtained on behalf of the steam-ship, and on Saturday forenoon, September 11th, between 11 and 12 o'clock, a young man was sent to libellant's office with a written notice that the wool would be discharged on the morning of Monday, September 13th. This notice was not produced by libellant, nor did respondents call the young man as a witness. The libellant, however, testified that he did receive, about 2 o'clock on Saturday, a written notice of the arrival of the ship, and that he could not tell how long the notice had been at his office before he received it. He sent it at once to his custom-house broker to attend to paying the duties, etc. On Monday, between 7 o'clock A. M. and 2 o'clock P. M., the wool was discharged. The pier at the end where the ship was lying was uncovered, but the other end was covered with a shed large enough to protect the whole cargo. Part of the wool was placed in the shed, and part on the uncovered portion of the pier. About 2 o'clock P. M. a bill for the freight was presented to libellant, who paid it under protest. About 3 o'clock P. M. libellant visited the wharf, and found that the wool had all been discharged and was then being weighed by the customs officers. About the same time it commenced to rain. Libellant sent a watchman to the wharf, who partially protected the wool with the steam-ships tarpaulins, but it continued to rain heavily during the night, and the wool on the uncovered portion of the pier was damaged. To recover for such damage libellant commenced this proceeding.

*Alfred Driver, Richard P. White,* and *J. Warren Coulston,* for libellant.
*Curtis Tilton* and *Henry Flanders,* for respondent.

BUTLER, D. J. The contract respecting delivery is special, and very specific. Libellant is required to "take the wool from the ship

immediately she is ready to discharge, any custom of the port to the contrary notwithstanding, otherwise it will be landed or put into craft by the master * * * at the merchant's risk and expense. The ship's resposibility to cease immediately the goods are discharged from her deck."

On the ship's arrival it was the master's duty to give reasonable notice of the time and place of discharge. Whether he performed this duty is the only question involved. If he gave notice on Saturday morning, as respondent alleges, it was reasonable and sufficient. The duty of proving he did is on the respondent; and if the fact is left in doubt a decree should go against him. I think, however, it is not left in doubt. A young man was sent with notice at the time named. No copy was retained nor is the young man produced. It is said he is beyond convenient reach. The answer admits, (impliedly at least,) the receipt of notice on Saturday forenoon. The suggestion that it did not contain a statement of the time and place of delivery is not sustained. The libel, as originally drawn averred the absence of such notice. The libellant, however, was unwilling to affirm this, and the word "sufficient" was inserted by the clerk before qualifying him. This seems like an admission that the notice was specific and particular. Such no doubt was the fact. It is quite plain that the libellant's only objection to it was its insufficiency, as he supposed, in point of time. Depending upon the general custom respecting permits from the customs department, he believed more time would be consumed, after the vessel's arrival, in preparing to deliver the wool than was actually necessary, and that he would thus be afforded more time in preparing to receive it than the notice contemplated. This is made plain by his own testimony. After admitting the receipt of notice on Saturday forenoon, the examination proceeds:

"*Question.* Will you tell me why you did not " go at once on Saturday, on receiving the notice of which you have spoken, and take charge of it?"

"*Answer.* Because it is out of custom. Our customary way is when wool comes in that it is put under sheds, and stays there until we have paid our duties, and gone through all the performances; and we don't know but what it is under proper protection until it is handed to us, and we have done with this cargo as with all the rest."

Here is the secret of all the trouble. He had no right to rely upon this custom. Having contracted to take the wool from the ship as soon as she could prepare for delivery, he was bound to do so, regardless of all customs. As before remarked, the notice on Saturday forenoon, of a purpose to deliver on Monday morning, was sufficient.

If he thought otherwise he should, at least, have objected. He, however, gave the subject no attention other than to send the paper to his broker. It was his duty to be present on Monday morning and receive his wool. In his absence the respondent was justified in placing it on the wharf, as he did. He was not required to store it, or place it under cover. Had the libellant been present, in accordance with his duty, it would not be suggested that the place of deposit was improper. Could he by disregard of duty impose on respondent the labor or expense of placing it elsewhere? Certainly not. If loss ensued it was from his own fault. The respondent did not undertake to store the wool, or in anywise protect it after leaving the ship. On the contrary, as we have seen, the libellant contracted to take it when ready for discharge and relieve the respondent from such duty.

The question, however, as before suggested, is one of notice simply, and this having been decided against the libellant, his complaint must be dismissed with costs.