### DE GRAU v. WILSON.[1]

*(District Court, E. D. New York.   June 6, 1883.)*

1. BILL OF LADING — COMMON CARRIER — WAREHOUSEMAN — DESTRUCTION OF GOODS BY FIRE.

 Where goods were shipped to New York under a bill of lading containing a clause, "goods to be taken from along-side by the consignee immediately the vessel is ready to discharge, or otherwise they will be landed by the master and deposited at the expense of the consignee, and at his risk of fire, loss, or injury, in the warehouse provided for that purpose, or sent to the public store, as the collector of the district shall direct," and the vessel arrived on a Wednesday morning, and on Thursday the merchandise was landed in good order, and placed by itself at an accessible part of the pier, the arrival of the vessel being known to the consignees on Thursday, who, on that day, had the bill of lading stamped by the ship as proof that the goods had arrived, and also entered the goods at the custom-house and procured a permit to land them, but made no attempt to remove the goods till late on the following Saturday afternoon, when one truck-load was taken away, and on Sunday a fire broke out on the pier and the goods were destroyed, *held*, that when the goods were burned, the relation of the ship-owners to them as common carriers had been terminated, and they were in the custody of the ship-owners as warehousemen.

1 Reported by R. D. & Wyllys Benedict, of the New York bar.

2. SAME—BURDEN OF PROOF—NEGLIGENCE.

> The burden of proof was upon the libelants to show that the fire was caused by the negligence of the defendants, acting as warehousemen, or their servants, and in the absence of proof of such negligence the libel was dismissed.

In Admiralty.

*R. P. Lee,* for libelants.

*Foster & Thomson,* for respondents.

BENEDICT, J. This action is brought to recover of the owners of the steam-ship Rialto the value of 48 parcels of bolt-rope, being part of a shipment of bolt-rope and oakum in the Rialto, to be transported from Hull to New York, which were destroyed by fire at the burning of the Eagle pier on Sunday, the sixth day of November, 1881. The merchandise in question was transported under a bill of lading, which, among other things, contained a provision that "the goods be taken from along-side by the consignee immediately the vessel is ready to discharge, or otherwise they will be landed by the master and deposited at the expense of the consignee, and at his risk of fire, loss, or injury, in the warehouse provided for that purpose, or sent to the public store, as the collector of the district shall direct." The steamer arrived at the Eagle pier, which was a covered pier, and her regular landing-place in New York, on the morning of Wednesday, November 2d. On Thursday, the merchandise called for by the bill of lading referred to, was landed in good order and placed by itself at an accessible part of the pier. On Sunday afternoon, November 6th, just at dark, a fire broke out in the oakum, which, with the bolt-rope in question, still remained upon the pier, and the pier, together with a large quantity of merchandise, including the packages in question, were burned, causing the loss sued for. The libel sets forth the bill of lading, and avers a non-performance of the contract. It proceeds upon the ground that at the time of the fire this merchandise was in the custody of the defendants as common carriers. These averments are denied by the answer, and the question at the threshold of the case is, what was the legal character of the defendants' custody of the goods at the time they were burned? Upon this question my opinion is that when the goods were burned the defendants' relation to them as common carriers had been terminated, and they were then in the custody of the defendants as warehousemen. The evidence shows that the voyage was completed on Wednesday morning. On Thursday, November 3d, the goods were duly landed at the usual landing and placed by themselves upon the Eagle pier, at a place accessible to the consignees. The arrival of the vessel was known to the consignees on Thursday, and they procured the bill of lading to be stamped by the ship as proof that the goods described therein had arrived in the ship. They also entered the goods at the custom-house on Thursday, and on the same day they procured a permit to land the goods, which permit on that day they caused to be presented at the ship. They were acquainted with the course of business in discharging the steamer, and

are chargeable with knowledge that in the ordinary course of business the whole cargo of the ship, including their goods, would be landed upon the Eagle pier by Friday. No attempt was made to remove the goods until Saturday, at 3 : 30 P. M., when they sent one truck to the pier and one load was taken away. The removal of the remainder was postponed until Monday. The only reason assigned for not removing all the goods on Saturday is that when the truck came on Saturday afternoon the United States weigher refused to weigh more than one load.

It is quite evident from the facts that, if the libelants had used ordinary diligence to remove their goods after they knew that their goods were upon the pier, they would have obtained all their goods early on Saturday, and no loss would have occurred.

This case is not one of casual information of the consignee regarding the arrival of the ship containing his goods. The facts in proof here are sufficient to charge the consignees with actual knowledge, not only of the arrival of the ship with their goods, but that the goods would be at the Eagle pier awaiting removal by the consignees on Friday, and leave no room for the libelants to claim that the failure to remove their goods on Saturday arose from want of notice that they had been landed on the Eagle pier.

The provision of section 2871 of the Revised Statutes does not affect the responsibility of the defendants. The libelants' goods were not landed under general order, but upon a permit obtained by the libelants, and presented at the ship by them on Thursday.

These facts appear to me to warrant the conclusion that the relation of the defendants to the libelants' goods, at the time of the fire, was that of warehousemen, and not that of common carriers. The case appears to come within the principle of the decision of the supreme court in *Richardson* v. *Goddard*, 23 How. 28, where it was held that a deposit of cotton in proper order, made with the knowledge of the consignee, upon a suitable pier, at midday on a week-day, in good weather, constituted a good delivery, and therefore that the ship-owner was not responsible for the destruction of the cotton by fire on the following night. This conclusion would seem to dispose of the case, inasmuch as the libel proceeds upon the ground of the defendants' liability as common carriers.

But assuming that the libelants can recover under the libel upon the ground of the defendants' neglect as warehousemen, and assuming further, but not deciding, that the provision of the bill of lading above quoted is not effective to relieve the defendants from liability for loss arising from a fire caused by the negligence of their servants, and occurring after the defendants had ceased to hold the goods as common carriers, I am of the further opinion that such a liability on the part of the defendants has not been shown. The case in this aspect is one for damages caused by negligence, and the burden is upon the libelants to show that the fire which destroyed their goods was caused.

by the negligence of the defendants or their servants. The proof, indeed, is that the libelants' goods were destroyed by fire which broke out upon the defendants' pier, where the goods were at the time stored. But proof of the occurrence of fire in goods upon the defendants' pier does not raise the presumption that the fire was caused by negligence either of the defendants or their servants, or any one else, (*Whitworth* v. *Erie Ry. Co.* 87 N. Y. 413,) and if, in the absence of any other ostensible cause, it is in this case to be presumed that the fire which broke out in the oakum on the defendants' pier was communicated to the oakum from a torch which the proof shows was being used at the time by the watchman of the pier for the purpose of lighting up the pier, still, proof of negligence on the part of the watchman is wanting. It was lawful and necessary for the watchman to light up the pier at the time he did, and to go near the oakum with the torch as he did, and fire might have been communicated from the torch to the oakum by a spark, or otherwise, without any negligence on the part of the person using the torch. In order, therefore, to find in the testimony proof that the fire was caused by negligence of the watchman, it is necessary to accept as true the narrative of the witness Rahman and his wife, called by the libelants to show the origin of the fire. But I am unable to accept that narrative as true, and rejecting that testimony leaves the libelants' charge of negligence to rest upon the inference that the cause of the fire was a negligent use of the torch by the watchman who was using it, drawn from the fact that the torch was being used at the time the fire broke out. Such an inference appears to me unwarrantable. I am unable, therefore, to find in the testimony proof that the loss of the libelants' goods was caused by negligence of the defendants or their servants.

For these reasons the libel is dismissed, and with costs.

See *Straus* v. *Wilson, infra.*