CATHARINE DRAPER, Appellant, *v.* THE PRESIDENT, MANAGERS AND COMPANY OF THE DELAWARE AND HUDSON CANAL COMPANY, Respondents.

Plaintiff shipped certain goods, by defendant's road, to be transported from B. to A., consigned to herself. By the bill of lading it was provided that upon the arrival of the goods at the place of destination, and when "placed upon the platform or in the storeroom of the company * * * awaiting delivery there to the consignee * * * or to be taken from the car by the consignee," the goods shall be held by defendant "under the liability of a warehouseman and not as a carrier." *Held*, that under the bill of lading defendant had the option on arrival of the goods to retain them in the car, or to place them in its warehouse, and in either case its liability as a common carrier ceased after the consignee had had a reasonable time to call for and remove them

Plaintiff did not reside in A., and was not there when the goods arrived; some days after, her agent called at the defendant's freight-house in that place and was informed that they had arrived and had been unloaded; he expressed regret at the unloading, as he contemplated their removal to another place and asked to have them stored for a few days, to which the freight agent assented. The goods had not in fact been unloaded, but were in a car standing near the freight depot; they were left in the car for about twelve days thereafter, when they were destroyed by fire. In an action to recover for the loss, *held*, that whether the goods were held under the bill of lading or under the arrangement made by plaintiff's agent, in either case defendant was liable as warehouseman not as carrier; that as warehouseman it was liable only in case of negligence on its part, causing the fire or in the care of the goods after the fire commenced; that upon this question the burden of proof was upon plaintiff; and that, as her evidence failed to show negligence, she was properly non-suited.

(Argued December 9, 1889; decided December 20, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made November 16, 1886, which affirmed a judgment in favor of defendant, ordered upon the trial in the County Court.

The nature of the action and the facts are sufficiently stated in the opinion.

*Amasa J. Parker* for appellant. The goods were in the possession and care of the defendant as a common carrier and

not as a warehouseman at the time they were destroyed by
fire. (*Edsall* v. *Camden*, 50 N. Y. 661; 14 Wend. 225; 45
N. Y. 578; 11 Wend. 305; 2 Kent's Com. 604; Edwards on
Bailments, § 615; *Nelson* v. *H R. R. R. Co.*, 48 N. Y. 498;
Redf. on Carriers, § 52; *Miller* v. *Steam Co.*, 10 N. Y. 437;
Angell on Carriers, § 156.) The non-suit was wrong, as there was
abundant evidence of negligence to require a submission of the
case to the jury. (*Jones* v. *Morgan*, 90 N. Y. 4; Abb. Trial
Ev., 555; Wharton on Neg., § 422; 107 Mass. 334; 11 Pick.
41; Story on Bailments, § 529; Angell on Carriers, § 472;
*National Bank* v. *City Bank*, 103 U. S. 658; *Hart* v. *H.
R. R. R. Co.*, 80 N. Y. 622; *Bernhard* v. *R. & S. Co.*, 1
Abb. Ct App. Dec. 131; *Keller* v. *N. Y. C. R. R. Co.*, 2 id.
480; *Wohlfiel* v. *S. A. R. Co.*, 38 N. Y. 49; *Cook* v. *N. Y.
C. R. R. R. Co.*, 1 Abb. Ct. App. Dec. 432; *Tanner* v.
*N. Y. C. & H. R. R. R. Co.*, 21 Wkly. Dig. 396.) The
defendant is also liable upon the ground that twenty days was
an unreasonable time to delay delivering the goods at the
warehouse, and plaintiff had the right to submit that question
to the jury. (*Rawson* v. *Holland*, 59 N. Y. 611; *Read* v.
*Spaulding*, 30 id. 630.)

*Edwin Young* for respondent. The motion for a non-suit
was properly granted upon the grounds stated. (44 N. Y.
505; 54 id. 214; 49 id. 223; 34 id. 548; 87 id. 413; 39 Ill.
335; 49 N. Y. 224; 9 id. 463; 15 id. 524; 38 id. 442; 56 id.
302; 53 id. 654; 49 id. 47; 49 id. 223; 97 id. 259; 87 id.
413; 51 id. 61; 46 id. 271; 25 id. 442; 71 id. 180; 48
id. 498; 59 id. 258; 24 How. Pr. 290; 1 Daly, 227; 3 Wall.
106.)

HAIGHT, J. This action was brought to recover the value
of a quantity of household goods and furniture which was
destroyed by fire.

On the 6th day of February, 1885, the plaintiff shipped the
goods and furniture in question by the defendant at Binghamp-
ton, to the city of Albany. The goods so shipped arrived in

Albany in due course of time and were left in the car in which they were shipped until the first day of March thereafter at which time they were destroyed by fire.

The first question which it becomes necessary for us to consider is as to whether the defendant can be held liable as a common carrier. It appears that at the time the goods were received at Binghamton for shipment the defendant issued to the plaintiff or her husband, who was there acting for her as her agent, a bill of lading in which the plaintiff's name was entered as "Mrs. Wm. Draper, Albany," in the usual place for the consignee, and by which the defendant undertook to transport the goods from Binghamton to its warehouse at Albany. Upon the back thereof there was printed conditions and rules forming a part of the contract, one of which provides as follows: "When goods arrive at the place to which they are to be carried over this line and are placed on the platform, or in the store-room of the company, according as the usage of business may require, awaiting delivery there to the consignee at such place, or to other carriers for transportation to points beyond the line of this compay, or to be taken from the car by the consignee, it is to be deemed a part of the contract that said goods shall be held in either case by this company under the liability of a warehouseman and not as a carrier." It will be observed that under this provision, the defendant becomes liable as a warehouseman, and not as a carrier after the goods have arrived at their place of destination and are placed on the platform or in the store-room of the company, or to be taken from the car by the consignee. The contract or the bill of lading does not specify what shall be done with the goods upon their arrival at the defendant's warehouse in Albany. The company, therefore, had its option to retain them in the car, to be taken from it by the consignee, or to remove the goods from the car and place them in the store-house, and in either case, the liability of the defendant as a common carrier would cease after the consignee had a reasonable time to call for and remove them. (*Fenner* v. *B. & S. L. R. R. Co.*, 44 N. Y. 505.)

Prior to this time the plaintiff had resided in Binghamton. She contemplated moving to the city of Albany, and had consequently caused the goods to be shipped to that place to herself as consignee. She was not present at the time the goods arrived, and did not at that time have a place of residence in Albany, so that she could be notified of their arrival.

It further appears that three or four days after the goods were shipped, her husband left Binghamton, going to the city of Utica, where he remained for two or three days, and then went to the city of Albany, and that in the fore part of the following week, or about the sixteenth of the month he called at the defendant's freight-house and inquired of the man in charge if the goods had arrived, and was informed that they had. He then asked if they had been unloaded from the car, and was informed that they had. He then remarked that he was sorry; that he did not know but he should have a situation in Utica, and should ship them to that place, and asked that they be stored for a few days until he could determine whether he should go to Utica, and offered to pay for such storage, and the man in charge informed him that he could leave them. The agent in charge was mistaken in reference to the goods having been unloaded. The car in which the goods were shipped was placed upon the track next to the platform of the freight depot, at the end thereof, so that the goods could be unloaded onto the platform or taken from the car by trucks from the opposite side, and there the car remained from the time of its arrival until the first of March, the time of its destruction. We are unable, however, to see how this affects the question for, when Draper, the plaintiff's husband, was informed that the goods had been unloaded, he expressed himself as being sorry that they had been, in view of his then contemplated removal to Utica. This would justify the defendant's agent in retaining the goods in the car after finding that he was mistaken in reference to their being unloaded. So, that whether the goods were held under the bill of lading or under the arrangement made by the plaintiff's husband at his interview with the freight agent alluded to, in either

case the defendant would only be liable as a warehouseman, and not as a carrier.

The question as to whether the defendant is liable as a warehouseman depends upon the question as to whether or not the fire originated through the negligence of the defendant, its agents or servants; or whether they were negligent in reference to the care of the plaintiff's property after the fire had commenced. Upon this question the burden was upon the plaintiff. The cause or origin of the fire is not disclosed. It does not distinctly appear where the fire broke out. Mr. Wadsworth, who was at the time the defendant's freight agent, testified that he was in the office of the freight-house at the time and believed that he first discovered the fire. He was sitting at his desk and saw smoke coming over the building past his window which he thought was more than would naturally come from the chimney. He thereupon directed Mr. Smith, one of the clerks, to step out of the door and see where the smoke came from and he did so, coming back and reporting that he believed the freight-house was on fire. The witness then rushed out himself and saw that the freight-house was on fire and caused the alarm to be sounded. He then looked again to locate the fire more carefully and saw the smoke rolling over pretty heavy from the building that was 200 or 250 feet away; that there was a very dense smoke, and he believed the fire originated in the lower end of the adjoining building, a building that ran at right angles with the buildings alongside of which the goods were placed, a different building from the main building. He then went to the yard where the engines were and set them to work getting the cars away from the building that was on fire and then came back and told the men to get their piles of papers together and get them out of the building. It does not distinctly appear whether the building in which he believed the fire originated and which was at right angles with the freight-house belonged to or was under the control of the company or not, so that we are left in ignorance as to the cause or origin of the fire or as to whether it broke out from the inside or outside of the building. The case

consequently fails to show negligence in reference to the commencement of the fire. (*Whitworth* v. *Erie R. Co.*, 87 N. Y. 413).

It appeared that there was a train of freight cars standing upon the track alongside of the freight-house; that these cars were hitched onto by an engine and drawn away; but that two cars, in one of which the plaintiff's goods were stored remained upon the track, they not being coupled onto the train that was drawn out. That shortly after the arrival of the fire department, hose were laid across the track for the purpose of conducting the water to the burning building and that thereafter the cars could not be run out over the hose without cutting them in two. One car, however, it appears was gotten out by raising the hose up over the top of the car. There was testimony to the effect that very shortly after the alarm was sounded and within about ten minutes the freight-house and the car in which these goods were stored were on fire and that the heat became very intense, so that they could not be approached with safety. The chief evidence relied upon as tending to show negligence in not saving this car was given by the witness Kingsbury. He testified that he reached the fire in about three minutes after the alarm was sounded; that the long freight-house at the end of Gansevoort street was then on fire; that there were locomotives around there which were standing upon the tracks; that they were not making any efforts at that time to get the cars off from the Church street track; that there were men there that he took to be railroad men and he spoke to one or two of them saying: "You want to get these cars out of here because the depot is going;" that there seemed to be quite a number of men there that looked like workmen and they were directing them about getting the books and different things out of the building; that there was a man directing them about the books; that the witness spoke to him, he told him that the freight-house was going and that he had better see about getting the cars away and that he did not seem to do anything about it. Upon the cross-examination he testified, however, that he was unable to

recognize the man who seemed to be engineering or telling the other men what to do; that they were engaged in getting the books and trying to save their effects, their records and things, and were pretty actively engaged; that they were all flying around trying to save what they could.

When we take into consideration the magnitude and rapidity of the fire, the dense smoke and intense heat with the vast amount of property in its immediate vicinity to be saved, we are inclined to adopt the view of the trial court to the effect that the evidence produced did not establish negligence in the failure of the defendant's agents and servants to save the car from the fire.

The judgment should therefore be affirmed with costs.

All concur, except VANN, J., who dissents upon the ground that there was enough evidence of negligence to require the submission of the case to the jury upon the last question discussed in the opinion.

Judgment affirmed.