### SMITH v. BRITAIN S. S. CO., Limited.

#### CHELSEA JUTE MILLS v. SAME.

(District Court, S. D. New York. May 28, 1903.)

**1. SHIPPING—CARRIAGE OF GOODS—RESPONSIBILITY AFTER DISCHARGE.**

Where, by the provision of a bill of lading, merchandise is to be delivered "from the ship's tackles where the ship's responsibility shall cease," her liability, after the goods are discharged, is that of a bailee, charged with the duty to take ordinary care of the property for a reasonable length of time, and not to abandon it, or negligently expose it to injury.

**2. SAME—LIABILITY FOR INJURY TO GOODS ON WHARF—DELAY OF OWNER IN REMOVING.**

Where the owners of a consignment of 6,400 bales of jute, required by the bill of lading to take it from the ship's tackles, were duly notified of the arrival of the ship and time of discharging, and on the first day removed over 1,200 bales, but did not remove any more until four days later, because it was more convenient to load it on lighters after the ship had left her berth, the ship was not liable for an injury by rain to a portion of the jute which she was compelled to unload on an uncovered part of the wharf because the shed under which the most of it was placed had been filled, and where she covered it, and took all reasonable care to protect it from injury.

In Admiralty. Actions to recover for injury to cargo after discharge.

Ernest A. Bigelow, for libelants.
Convers & Kirlin, for respondent.

HOLT, District Judge. These actions are brought to recover damages for injury caused by rain to bales of jute which were imported from Calcutta on the steamship Romford. The steamship discharged at a covered pier in Brooklyn, and, after the section of the pier at which the steamship lay, and which it was entitled to use, was entirely filled with cargo, the jute in question was placed on an uncovered portion of the pier, and was damaged by rain. The provision in the bill of lading that the merchandise was to be delivered "from the ship's tackles, where the ship's responsibility shall cease," fixed the respondent's liability by contract, and made proof of cus-

tom inadmissible.   Turnbull v. 87 Blocks of Marble (D. C.) 9 Fed. 320; Turnbull v. Citizen's Bank (C. C.) 16 Fed. 145; The Kate (D. C.) 12 Fed. 881.   The respondent's liability as to any merchandise, after it was discharged from the vessel, became that of a bailee, charged with the duty to take ordinary care of the property, and not to abandon it, or negligently expose it to injury.   Tarbell v. Royal Exchange Shipping Co., 110 N. Y. 180, 17 N. E. 721, 6 Am. St. Rep. 350; The Boskenna Bay (C. C.) 40 Fed. 91, 6 L. R. A. 172; Richardson v. Goddard, 23 How. 28, 16 L. Ed. 412; The Santee, Fed. Cas. No. 12,330, 7 Blatchf. 186; The Kate (D. C.) 12 Fed. 881.

The libelants had due notice of the arrival of the Romford immediately on her arrival.   Part of the jute had been discharged on Wednesday, March 15th, and notice of that fact was sent that day and received the next day by the libelants.   On Friday, the 17th, further notice was sent that all the goods would be out the next day, the 18th, and requesting immediate removal.   6,427 bales of jute were imported.   Of these, on March 16th, the lighter Deep River took 342 bales, and the lighter Mary Gray 400 bales, and 500 bales were trucked away.   No other jute was removed until March 20th and later.   The entire covered section of the pier opposite which the Romford lay was filled with cargo, and when it had become filled some of the jute was placed outside on an uncovered part of the wharf.   This part was floored, and the jute was placed on dunnage, and carefully covered with tarpaulins, but was somewhat injured by rain on the night of Saturday, the 19th, and on Sunday, the 20th. There was room forward and aft of the steamer for lighters to lie opposite section A, the part of the pier where the Romford lay, and the steamer had the right to deliver goods from Section A through Section B, which was free from cargo; and except in high winds lighters could safely take cargo off from the open part of the wharf on the other side of the covered pier.

It was the duty of the respondent to take reasonable care of the goods on the wharf for a reasonable time, and it was an equal duty of the libelants to remove their goods promptly.   The evidence satisfies me that the libelants might have removed the merchandise before the Saturday night and Sunday on which it was injured.   In my opinion, there was nothing to prevent lighters from working.   The libelants appear to have intentionally waited until the Romford left, it being probably a little more convenient to load the lighters when lying at the part of the wharf where the Romford discharged the cargo.   The first lot of jute was landed on the 16th, and on that day 742 bales were lightered and 500 bales trucked away.   There does not appear any reason why the rest of the jute should not have been removed as promptly.   Three days were certainly more than enough time in which to remove it.   Tarbell v. Royal Exchange Shipping Co., 110 N. Y. 180, 17 N. E. 721, 6 Am. St. Rep. 350.   The respondent did not put any of the jute outside until the covered compartment which it was entitled to use was filled.   It cannot be that consignees can lie by and do nothing about removing their goods until a vessel has entirely filled the shed where she is unloading, and then hold her for damages because she has to put the rest of the

cargo outside the shed. A wharf is for the use of the steamship company. It is not a place for the storage of merchandise until it is entirely convenient for the consignees to remove the goods. There is no proof that the weather was bad when the jute was placed on the uncovered part of the wharf. There was no negligence in placing it there, if it had been promptly taken away. The negligence was in leaving it there, and that was the negligence either of the libelants or of the lightermen. The Boskenna Bay (C. C.) 40 Fed. 91, 6 L. R. A. 172; The Kate (D. C.) 12 Fed. 881.

My conclusion is that the libels should be dismissed, with costs.