THYLL v. NEW YORK & L. B. R. CO. et al.

(Supreme Court, Appellate Term.   June 30, 1903.)

1. CARRIERS—LIMITING LIABILITY—BURDEN OF PROOF.

Where a shipping contract exempts the carrier from liability for damages by wet, the shipper must establish that the carrier negligently permitted the goods to become wet, by proving affirmatively some specific act of negligence as the proximate cause of the injury.

2. SAME—CONNECTING CARRIERS.

Where a shipping contract exempts the carrier from liability for damages by wet, and limits its liability to damages occurring on its own line, evidence that within a reasonable time it delivered plaintiff's goods at the freighthouse of another company in the same condition in which they were received, and that at no time were they exposed to the weather, is sufficient to relieve the carrier from liability for damages because the goods were wet when finally delivered.

3. SAME—DAMAGE TO GOODS—EVIDENCE—SUFFICIENCY.

Where goods shipped from a foreign country, and packed in a straw hamper, which afforded no protection against dampness, were found to be injured by damp when received, that they remained in the warehouse of the delivering carrier for some days, during which time it rained incessantly, and that the hamper stood near the door of the freighthouse, without any positive evidence that the goods were rained on, is not sufficient to show the goods were damaged in such carrier's possession, when met by evidence that the freighthouse did not leak, that the doors were constantly closed, and that the hamper was not rained on or leaked on while in the freighthouse.

4. SAME—CONDITION OF GOODS—RECEIPTS.

A receipt by a carrier for goods "in apparent good order, except as noted (contents and condition of contents of packages unknown)," raises no presumption against the carrier as to the actual condition of the goods when received, and the burden rests on the shipper to show they were in good condition when received.

5. SAME—CARRIER'S COMMUNICATION TO SHIPPER—EVIDENCE.

A communication from a connecting carrier to a shipper, that goods were in good condition when delivered by it to the delivering carrier, is not evidence against the latter of the condition of the goods when received by it.

Appeal from City Court of New York, General Term.

Action by Lillian M. Thyll against the New York & Long Branch Railroad Company and another.  From a judgment for plaintiff, and an order denying defendants' motion for a new trial, they appeal. Reversed.

Argued before FREEDMAN, P. J., and GILDERSLEEVE and MacLEAN, JJ.

Robinson, Biddle & Ward (A. Leo Everett and Henry Galbraith Ward, of counsel), for appellant Pennsylvania R. Co.

De Forest Bros. (Robert Thorne, of counsel), for appellant New York & L. B. R. Co.

Theo. T. Baylor, for respondent.

FREEDMAN, P. J.   Plaintiff sued for damages to her household goods, consisting of linens and clothing, contained in a hamper, delivered to the Pennsylvania Railroad Company for shipment from

¶ 4. See Carriers, vol. 9, Cent. Dig. §§ 159, 581.

New York to Elberon, N. J. The hamper was delivered to the Pennsylvania Railroad Company by Downing's Express Company, acting on behalf of the plaintiff, on July 5, 1901. The Pennsylvania Railroad Company carried the hamper in a covered car to Elberon, and delivered it there in a freighthouse, which was under the control and management of the New York & Long Branch Railroad Company, and where it was found by the plaintiff about 19 days thereafter. The hamper having been delivered to the plaintiff, the contents were found to have been damaged by wet, and the plaintiff's cause of action is founded upon the allegation that the defendants negligently permitted the goods to become wet. The shipping contract, among other things, contained a provision exempting the carrier from liability for damages by wet, and a further provision limiting the liability of the carrier to damage occurring on its own line. Notwithstanding these provisions, however, the carriers remained liable if they negligently permitted the goods to become wet. The plaintiff was therefore bound to establish such negligence by a preponderance of evidence, and this could only be done by proving affirmatively some specific act of negligence by the carrier sought to be held as the proximate cause of the injury. Whitworth v. Erie R. Co., 87 N. Y. 413; Platt v. Richmond, Y. R. & C. R. Co., 108 N. Y. 358, 15 N. E. 393; Draper v. Pres., etc., D. & H. C. Co., 118 N. Y. 118, 23 N. E. 131.

As against the Pennsylvania Railroad Company there is no evidence whatever of any negligence. Although it had the right to run its trains over the tracks of the New York & Long Branch Railroad Company, the contract between the two companies expressly provides that the New York & Long Branch Railroad Company shall be held liable for any damages done by the neglect or misconduct of its own employés. There is nothing in the case upon which it can be held that the New York & Long Branch Railroad Company acted simply as the agent of the Pennsylvania Railroad Company. The latter company discharged its duty to the plaintiff when within a reasonable time it carried and delivered plaintiff's goods to and at the freighthouse of the other company in the same condition in which they were received, and the evidence affirmatively shows that at no time was plaintiff's hamper exposed to the weather while in the possession of the Pennsylvania Railroad Company. The judgment against said company cannot, therefore, be sustained.

As against the New York & Long Branch Railroad Company a different case is presented. The freighthouse at Elberon was under its control and management, and plaintiff's hamper was kept there for about 19 days. The delay was not the proximate cause of the injury, if the hamper was properly protected in the meantime, especially if, as was held by the trial judge, no notice of arrival was necessary to be given to the plaintiff under the laws of New Jersey. The liability of the New York & Long Branch Railroad Company to the plaintiff was that of a warehouseman, and the case against it comes down to the question whether it negligently permitted plaintiff's hamper to become wet. The mere fact of injury creates of itself no presumption of negligence, but affirmative proof is necessary to

show specific negligence as the proximate cause of the injury. Upon this branch of the case the testimony given by and on behalf of the plaintiff is to the effect that the weather was dreadful during July, 1901, that it rained incessantly, and that rain must have been permitted to fall upon the hamper, because, when found, it stood not very far from the door of the freighthouse. But neither the plaintiff nor any of her witnesses saw rain come into contact with the hamper, or the place where it stood when found, and the actual injury to the goods was not discovered until they were unpacked at plaintiff's house. On the other hand, the New York & Long Branch Railroad Company gave evidence to the effect that the freighthouse at Elberon did not leak; that its doors were habitually kept closed in rainy weather; that the hamper was placed some 8 or 10 feet inside of the doors, and was not rained upon or leaked upon; and that in houses at Elberon shoes and clothing became damp and moldy simply from the effect of damp and rainy weather. Upon this state of the evidence, it. cannot be held that the plaintiff sustained the burden of proof. But even if this were otherwise, no testimony whatever was offered as to the condition or treatment of the hamper between May 14th and July 5th, the day it was delivered to the Pennsylvania Railroad Company. The goods were packed by the plaintiff in Berlin prior to May 14th, on which day she caused them to be shipped, by way of Liverpool, to New York, consigned to Downing's Express Company. They arrived in New York May 28th or 29th, on board the steamer Cymric, and were then taken to the customhouse stores, from which they were taken by Downing's Express Company to the Pennsylvania Railroad Company. The goods were packed and shipped in a straw hamper, which afforded no protection against dampness; and the hamper was never seen by the plaintiff from the time it left Berlin until July 25th, when she called for it at the freighthouse at Elberon, and even then the hamper presented no outward appearance of having been subjected to wet. The receipt of the Pennsylvania Railroad Company for the goods "in apparent good order, except as noted (contents and condition of contents of packages unknown)," raises no presumption whatever against the carrier as to the actual condition of the goods when received; and the burden rests upon the plaintiff to show by affirmative proof the nature and condition of the contents, and that they were in fact in good order when received by the carrier. Such words in a receipt by the carrier refer only to the outward appearance of the package. 5 Am. & Eng. Ency. of Law (2d Ed.) p. 354; Miller v. H. & St. J. R. R., 90 N. Y. 430, 43 Am. Rep. 179; Clark v. Barnwell, 12 How. 272, 13 L. Ed. 985. That being so, the only thing left to prove that the contents of the hamper were in good condition when delivered by the Pennsylvania Railroad Company to the New York & Long Branch Railroad Company is a letter of the claim agent of the Pennsylvania Railroad Company to such effect. That letter was written pursuant to plaintiff's inquiry, to induce her to believe that the Pennsylvania Railroad Company was not at fault; but, while it estops the Pennsylvania Railroad Company from maintaining that it received the hamper in bad con-

84 N.Y.S.—12

dition, it is not binding upon the New York & Long Branch Railroad Company, nor is it any evidence, as against the latter company, of the condition of the contents of the hamper when received by it. The latter company has a right to insist that its liability shall be determined by the testimony of witnesses who may be subjected by it to cross-examination.

Upon the case as it stands, a verdict should have been directed in favor of the defendants.

The judgment and order appealed from should be reversed as to both defendants, and a new trial ordered, with costs of this appeal to each of them to abide the event. All concur.