**STANDARD BRANDS, Inc., v. NIPPON YUSEN KAISHA et al.**

No. 887.

District Court, D. Massachusetts.

Nov. 19, 1941.

**44**

Edward A. Neiley, of Boston, Mass., for
libelant.

Arthur J. Santry and Frederick Fish of
Putnam, Bell, Dutch & Santry, both of
Boston, Mass., for respondent N. Y. K.

Elliott F. Cameron, of Willard, Allen &
Mulkern, of Boston, Mass., for respondent
Boston Terminal.

SWEENEY, District Judge.

This is an action in admiralty in which
the libelant seeks to recover for damage
to a consignment of tea resulting from
water seeping through several of the tea
chests while they were stored in a ware-
house in this city. The respondent denies
liability. The action as to the respondent
Boston Tidewater Terminal, Inc., has been
discontinued. It has been stipulated by
the parties that, if liability exists, damages
are to be awarded in the sum of $295.20.

## Findings of Fact

Five hundred chests of tea were received
aboard the vessel S. S. "Arima Maru" in
good condition in Japan for shipment to
the port of Boston. The goods were dis-
charged from the vessel at Boston in the
same good condition. The bill of lading
provided, in substance, that the goods
might be discharged as soon as the ship
was ready to unload by being placed on the
wharf or warehouse at the sole risk of the
consignee.

The S. S. "Arima Maru" arrived at the
Army Base Pier, Boston, on the morning
of November 3, 1939, and immediately be-
gan unloading. Notice of its arrival was
sent to the libelant that day. The unload-
ing, which was conducted by stevedores em-
ployed by agents of the respondent, was not
completed until 11 A. M. the following
day, which was a Saturday. The consignee
was not present or in any way represented
at the unloading operations. The tea was
placed in a storage shed on the wharf, the
use of which was provided to the respond-
ent for six days without storage charge as
an incident to their docking accommoda-
tions. The tea was placed on the floor of
the shed about two feet away from a sliding
door which was some twenty-five feet wide,
and which opened out onto the wharf fac-
ing north. This door opened and closed by
sliding it up and down. Due to some de-

fect, it could never be completely shut, so
that when it was pulled down as far as it
would go there remained a gap about two
inches wide between the bottom of the door
and the floor. The only protection beneath
libelant's cargo, separating it from direct
contact with the floor, was a thin layer
of sawdust. The damage to libelant's tea
was occasioned by a large quantity of
water seeping underneath the door during
a storm on the night of Sunday, November
5th. The wind, blowing from the northeast
during a heavy rainstorm, was one of the
severst ever recorded in Boston, reaching
a velocity at one time of fifty-six miles
per hour. Efforts were made to stop the
seepage of water by placing sawdust bags
along the bottom of the door, but without
success. On other occasions water had
leaked underneath this door.

Respondent contends that it cannot be
held liable, first, because its liability as a
common carrier had terminated under the
terms of the bill of lading; second, be-
cause there was no negligence on its part
causing the damage; and, third, because
the damage was the result of an "act of
God".

## Discussion

 There is no question but that,
under the bill of lading involved, the re-
spondent's liability as a common carrier
had ceased on discharge of the cargo
from the ship. Constable v. National
Steamship Co., 154 U.S. 51, 14 S.Ct. 1062,
38 L.Ed. 903. Nevertheless, where the
consignee is not present to accept im-
mediate delivery of the goods, regardless
of the form of the contract of carriage,
the carrier cannot exempt itself from its
negligence in exposing goods to loss or
damage after discharge from its ship. This
was recognized in the Constable case, supra,
where the court said, 154 U.S. at page 67,
14 S.Ct. at page 1069, 38 L.Ed. 903: "Had
this cargo been discharged * * * so
that it was exposed to the weather or to
any unusual hazard, and a loss had been
incurred, we should not have hesitated to
hold the carrier liable, notwithstanding the
stipulation against the consequence of
negligence in its bill of lading." Compare:
Bank of Kentucky v. Adams Express Co.
93 U.S. 174, 23 L.Ed. 872. Until receipt
by the consignee, the carrier, despite any
terms to the contrary in its bill of lading,
continues to hold goods unloaded by it as a
bailee. Or, as some cases have put it,
where, by the terms of the bill of lading,

the contract of carriage terminates on discharge of the cargo from the ship, its liability changes from that of a common carrier to that of a warehouseman, and, as such, it is bound to exercise ordinary care in the protection of the goods. The Italia 2 Cir., 187 F. 113; The Boskenna Bay, C.C., 40 F. 91, 6 L.R.A. 172; Smith v. Britain S. S. Co., D. C., 123 F. 176; The City of Lincoln, D.C., 25 F. 835; and compare: De Grau v. Wilson, D.C., 17 F. 698, affirmed, C.C., 22 F. 560. In the Italia, supra [187 F. 114], the court said: "The provisions of the bill of lading are the same as those which were considered in Constable v. National S. S. Co., 154 U.S. 51, 14 S.Ct. 1062, 38 L.Ed. 903. The liability of the carrier as carrier ceased with discharge at a proper pier, and he can be held only for negligence in caring for the goods until the consignee comes to remove them." Of course, where the loss would not have occurred except for the negligence of the consignee in failing to remove his goods promptly, he cannot then be heard to charge the carrier for their loss. Smith v. Britain S. S. Co., supra.

The libelant was not negligent in failing to seasonably remove its shipment of tea. The unloading operation continued until almost noon on Saturday, and it was not unreasonable for the consignee to wait over the weekend before coming to get its goods since they were not perishable, and it probably knew that the respondent was allowed six days free use of the storage sheds on the wharf where the ship docked.

On the other hand, placing the tea on the floor within two feet from a door which could not be properly closed, and under which water had leaked on previous occasions, was certainly not exercising the degree of ordinary care which would be expected of any warehouseman or bailee for hire. Heavy rains are to be expected at the time of year when this damage occurred. A reasonable amount of precaution in blocking the gap under this door, or placing elevating supports under these chests, or placing them far enough away from the door so as to be free from seepage water, would have prevented the damage.

### Conclusions of Law

From the foregoing I find and rule that the respondent was negligent in failing to properly care for the libelant's consignment of tea. The libelant is entitled to recover from the respondent the sum of $295.20.

The contention of respondent that the damage was occasioned by an "act of God" is without merit, since, as was said in The Adventuress, D.C., 214 F. 834, 839: "Such a defense cannot be successfully made where the injury could have been avoided by precaution." Compare: The Majestic, 166 U.S. 375, 17 S.Ct. 597, 41 L.Ed. 1039; Hecht v. Boston Wharf Co., 220 Mass. 397, 107 N.E. 990, L.R.A.1915D, 725, Ann.Cas.1917A, 445.