## Hoeveller et al. *v.* Myers et al., Appellants.

*Bailment—Evidence—Warehouse receipt.*

In an action on a warehouse receipt to recover damages for the nondelivery of the goods stored, the burden is on defendants to show that the goods were delivered to somebody by the authority of plaintiffs or that they disappeared with the knowledge and consent or with the concurrence of plaintiff.

Argued Oct. 31, 1893.   Appeal, No. 200, Oct. T., 1893, by defendants, Harry C. Myers and Thomas Tate, trading as Myers & Tate, from judgment of C. P. No. 1, Allegheny Co., June T., 1892, No. 120, on verdict for plaintiffs, Joseph A. Hoeveller and Eugene S. Day, partners.   Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Assumpsit on warehouse receipt.   Before STOWE, P. J.

At the trial it appeared that, on Jan. 11, 1888, plaintiffs deposited with defendants for storage a number of tierces of hams,

taking a warehouse receipt for them.  On April 1, 1888, defendants' lease expired and the building was leased to the Grocers Supply Co.  Tate, one of the defendants, testified that, on the day the Grocers Supply Co. took possession, Hoeveller was in the building; that he (Tate) told Hoeveller to go down into the cellar and count the meat, and that when Hoeveller came up he (Tate) said : " Did you count the meat ? " and Hoeveller replied, " Yes, the meat is all right." On cross-examination, Tate testified that he saw Hoeveller take no book or account with him, and he didn't know how Hoeveller could tell if the hams were all there—there being over fifty tierces.  An arrangement was made with the Supply Co. by which the meat was to be delivered when called for on account of Myers & Tate.

The charge of the court was as follows :

" The whole question, when it comes to the culminating point, depends upon whether these goods—these hams—were in this storehouse at the time of the transfer by the defendants to the Grocers Supply Co.  If they were, then it being uncontroverted that the arrangement between all these parties was that they were to remain in the charge of the Grocers Supply Co.—I believe that is uncontroverted, assuming it to be so—then the Grocers Supply Co. would be liable in case they were taken away after that; but I presume the jury will have no difficulty in coming to the conclusion that they were not removed after the Grocers Supply Co. took charge of this warehouse.  Then if they were not there it devolves upon the defendants here to show how they got away.  The burden of proof is upon them.

" The allegation that they were there at the time of the transfer is based on what is said about Mr. Hoeveller, who went down into the cellar and pretended to make, or sought to make an examination, in some respect, of this meat, and came up and said it was all right.  It seems to have been at that time that they were talking about the transfer, and possibly the natural inference would be that the quantity of meat was all right, but that is for the jury to determine.  It might have had reference to the fact that the meat was in good condition, and they were not going to make any objections to the transfer, because they were not bound to agree to the transfer.  They had them, as I understand, bound to take care of this meat for a certain length of time.  If they saw fit to take the Grocers Supply Co. for their

agents, and it did take it out of their hands—it does not make any difference how, without the consent of the owners—the defendants would be responsible, and they would have to look to the Supply Company for their remedy. But, from the testimony, it would seem as though the plaintiffs themselves had agreed that the Grocers Supply Co. should be substituted as custodians of the meat; so I say it comes down to the fact of whether the meat was there at the time of the transfer. I do not think that the fact that they did not have the certificates there amounts to much, because they were pledged for the meat. It does not make any difference, so far as the liability is concerned, whether they were there or not; if it were indorsed on the certificates, it would be different, but the bank had them, and they were holding the plaintiffs as the parties who were to make them good. So far as everybody except the parties themselves were concerned they still would be more or less the agents for the defendants in this case, and if there was no arrangement between the plaintiffs and defendants, the plaintiffs would have to look to the defendants and the defendants to the Supply Co.

"It is admitted that the defendants received this meat and had it in charge. Now it devolves upon them to satisfy you that it was given out without their consent. Whether it was carted off by somebody or misdelivered by the defendants to some person by mistake is immaterial. They must show by the evidence that it was delivered to somebody by the authority of the plaintiffs. The law says to them, the fact shows that you got it in; now, the law says if you want to relieve yourselves from responsibility for it, you must account for its disappearance, and that is the turning point in the case—was it there at the time of the delivery? If so, what became of it? The Supply Co. say they never disposed of it and made no inquiry about the matter until they were called upon for the meat—the certificates delivered to them—and they then undertook to deliver the meat and they found it was short.

"Well, now, if they didn't dispose of it themselves, it follows, it seems to me, as a natural, absolute, convincing conclusion that if the Supply Company, or some of its employees, did not dispose of it, it was not there at the time of the transfer. If it was not there at the time of the transfer, then the defendant is

bound to satisfy you in some reasonable way that it disappeared with the knowledge and consent, or with the concurrence of the plaintiffs.   Otherwise, your verdict should be for the plaintiffs."

Verdict and judgment for plaintiff.   Defendant appealed.

*Error assigned* was above instruction, quoting it.

*James T. Buchanan, Montooth Bros.* with him, for appellants.

*Levi Bird Duff, L. B. D. Reese* with him, for appellee.

PER CURIAM, November 13, 1893:

This case involved a question of fact which was clearly for the jury.   It was submitted to them with instructions which appear to be free from any error that would justify a reversal of the judgment.   The assignment of error is not sustained.

Judgment affirmed.