## LYMAN v. SOUTHERN RAILWAY COMPANY.

(Filed June 2, 1903.)

1. EVIDENCE—*Witnesses—Hearsay Evidence—Res Gestæ—Warehouseman.*

In an action against a warehouseman to recover damages for loss of goods by fire, the statement of persons some time after the fire had started, as to its origin, is not competent, it not being a part of the res gestæ.

2. EVIDENCE—*Witnesses—Opinion and Evidence—Warehouseman.*

In an action against a warehouseman to recover damages for the loss of goods by fire, a witness can not testify, judging from the condition of the warehouse, how long the fire had been burning when the fire company arrived, the fire not having originated in the warehouse.

3 EVIDENCE — *Declarations — Principal and Agent — Warehouseman— Railroads.*

In an action against a warehouseman to recover damages for the loss of goods by fire, the declarations of an agent made after the fire are not admissible.

4. WAREHOUSEMEN—*Negligence—Damages—Railroads.*

In this action against a warehouseman to recover damages for the loss of goods by fire, the evidence is not sufficient to show negligence on the part of the railroad warehouseman.

Douglas, J. dissenting.

Action by T. B. Lyman against the Southern Railway Company, heard by Judge *M. H. Justice,* at March Term, 1902, of the Superior Court of Buncombe County. From a judgment for the defendant, the plaintiff appealed.

*F. W. Thomas* and *Luther & Wells,* for the plaintiff.
*Tucker & Murphy* and *A. B. Andrews, Jr.,* for the defendant.

Connor, J.   This action is prosecuted by the plaintiff for the recovery of the value of certain personal property in the

warehouse of the defendant at Asheville, N. C., destroyed by fire on October 27, 1894. "The plaintiff did not contend that the defendant was liable as a common carrier, but sought to hold it liable as warehouseman." The material facts, proved by the plaintiff and for the purpose of the decision of the case, taken to be true, are:

The plaintiff delivered to the defendant at Raleigh, N. C., on October 12, 1894, the property (destroyed as above stated) for shipment to Asheville, N. C., being a marble bust of the plaintiff's father, of the value of $400, a pedestal for the bust, a table and an ebony chair. The goods arrived safely at. Asheville and were kept in the defendant's warehouse with the understanding that the plaintiff would pay the company for storing them for him. When he applied for the property he was told by the defendant's agent that it had been destroyed by the fire which burned the warehouse on the morning of October 27, 1894. The plaintiff showed by several witnesses that they were members of the fire company and when they reached the scene of the fire, the north end of the warehouse and several cars near the warehouse were burning. The defendant's agent cautioned the firemen to be careful, saying that there were explosives—did not say where they were. Witnesses heard two or three small explosions, but did not know where they were. The cars were burning twenty-five or thirty yards from the depot—heard an explosion outside. The firemen put two streams of water on the fire. There was a strong wind blowing up the river. The fire company got to the fire fifteen or twenty minutes after the alarm was sounded. Fire spread to the cars on the track. There were explosions seventy-five feet from where they were at work. The nearest car was fifty feet from the depot. The fire company was efficient. There was a hydrant within 200 feet of the depot. The warehouse was nearly burned up before the explosion. It is about one mile

from the fire department to the depot. The fire had not reached the warehouse when the fire company got there; fire in cars at the time, and a strong wind blowing towards the warehouse; there was an explosion in one car after the fire company got there, but it did not deter the firemen. The railroad company had no apparatus about its warehouse for extinguishing fire or turning water on it; the warehouse could have been saved if it had not been for the wind; fire was first discovered in the building near the warehouse, connected with the warehouse by a shed. The defendant had some barrels in the warehouse which were supposed to be kept full of water with buckets connected; there was no evidence that water was in those barrels at the time, nor hose and other apparatus usually kept in hotels and other large buildings. There were water connections close to the warehouse.

The defendant demurred to the evidence and moved to non-suit the plaintiff. The motion was allowed and the plaintiff excepted and appealed.

The witness Gennett said that he heard some men talking about the fire at the time, but did not know or remember who they were. The plaintiff asked the witness to state what these men said about the fire and its origin. The defendant objected, objection sustained and plaintiff excepted. The question was clearly incompetent. The fire had been burning some fifteen or twenty minutes when the witness got there. Any statement made after that interval by persons unknown to the witness could not be a part of the *res gestae,* and was not otherwise competent. The exception can not be sustained.

Jesse Patton was asked, "How long, judging from the condition of the warehouse when the fire company got there, had the fire been burning?" Upon the defendant's objection the question was ruled out and the plaintiff excepted.

The question was not competent. The fire did not originate in the warehouse, and its condition at the time the witness reached there was no evidence as to the time the fire begun. The witness proceeded without objection to describe the condition of the warehouse when he got there. The ruling of his Honor was correct.

The plaintiff proposed to ask same witness in regard to declarations of Clark, the defendant's agent, made a few days after the fire. This was upon objection excluded. It is well settled that the declarations of an agent made after the transaction are not admissible. *Southerland v. Railroad Co.,* 106 N. C., 105.

It is conceded that the defendant held the goods destroyed as warehouseman. Ever since the case of *Coggs v. Bernard* (Lord Raymond, 909), Smith's L. C., 354, which Mr. Smith says "Is one of the most celebrated cases ever decided in Westminster Hall, and justly so, since the elaborate judgment of Lord Holt contains the first well ordered exposition of the English law of bailments," the measure of duty owing by bailees in regard to the several kinds of bailment has been settled. The only duty devolving upon the courts has been to apply the principles announced by Lord Holt to the facts in the cases as they arise. "As to the responsibility of the present bailee (warehouseman) ordinary or average diligence is required. This is such care and diligence as prudent persons of the same class are wont to exercise towards such property, or in the management of their own property under like circumstances. For failure to exercise this degree of care and diligence the bailee must respond." Smith L. C., Vol. 1 (9 Ed.), 414; Jones on Bailments, 97; Hale on Bailments and Carriers, 238.

"The burden of proof is on the plaintiff to show negligence." *Ibid,* 239. The fact that the goods are destroyed

by fire raises no presumption of negligence on the part of the bailee.

This court, in *Neal v. Railroad,* 53 N. C., 482, by Manly, J., says: "Ordinary care is what is required and this is defined by a recent elementary treatise (Story on Bailments, Sec. 41) to be 'That which men of common prudence generally exercise about their own affairs in the age and country in which they live.' *Turrentine v. Railroad,* 106 N. C., 375; 6 Am. St. Rep., 602; *Daniel v. Railroad,* 117 N. C., 603.

Applying these principles to the facts in this case, we concur in the ruling of his Honor. The only suggestion of negligence is that there was in the warehouse, or in some cars nearby, some explosives which rendered it dangerous for the firemen to go into, or near enough to the warehouse to stop the fire. It does not appear what the explosives were, where they were, or how long they had been in or near the warehouse. One of the plaintiff's witnesses says that they would have saved the warehouse but for the strong wind; another that the "fire company was efficient." There is no testimony tending to show that the explosives caused the fire. The nearest approach to evidence as to the location of the explosives was that there was an "explosion in one car soon after the fire company got there, but did not deter the firemen." There was a hydrant within 200 feet of the fire; another witness said there were two hydrants near the warehouse. The firemen put two streams of water on the fire. Without pursuing the discussion, we are of the opinion that the judgment was correct and must be

Affirmed.

DOUGLAS, J., dissenting.