ALBERT M. JORDAN, PLAINTIFF IN ERROR, v. IRENE MOORE AND OTHERS, DEVISEES OF I. WHILDEN MOORE, DECEASED, DEFENDANTS IN ERROR.

Argued November 21, 1911—Decided March 5, 1912.

1. Under article 4, section 7, placitum 4 of the New Jersey constitution, which provides that "every law shall embrace but one object, and that shall be expressed in the title," the title of an act of the legislature constitutes a limitation upon the enacting clauses, and any construction of the latter that will give them a scope beyond the object expressed in the title is to be rejected.

2. The manifest purpose of the legislation respecting absent and absconding debtors as found in the so-called "Attachment act" (*Pamph. L.* 1901, p. 158; *Pamph. L.* 1903, p. 70; 1 *Comp. Stat.*, p. 132) is to enforce claims against defendants who are not within the reach of the ordinary process of our courts by subjecting their property that is within the jurisdiction to the payment thereof.

3. Under section 5 of the so-called "Attachment act" (*Pamph. L.* 1901, *p.* 158; *Pamph. L.* 1903, *p.* 70; 1 *Comp. Stat., p.* 136), which declares that "Attachments may issue for the debt of a deceased debtor against his executor, administrator, trustee, heir or devisee, in all cases in which the writ might have issued against such debtor immediately prior to his decease, and all real estate descended from or devised by him to the heir or devisee may be attached," &c., an attachment may be issued against heirs or devisees being non-residents of this state for the attachment of real estate situate within this state, although the deceased debtor was a resident at the time of his death.

On error to the Supreme Court, whose opinion is reported in 52 *Vroom* 118.

For the plaintiff in error, *John J. Crandall.*

For the defendants in error, *Thompson & Smathers.*

The opinion of the court was delivered by

PITNEY, CHANCELLOR. This writ of error brings under review an order of the Supreme Court quashing a writ of foreign attachment against the defendants as devisees of I. Whilden Moore, deceased, that had been issued on the authority of section 5 of the so-called "Attachment act." *Pamph. L.* 1901, *p.* 159; 1 *Comp. Stat., p.* 136.

The writ was issued upon the strength of an affidavit which set forth that the said I. Whilden Moore, in his lifetime, was indebted to the plaintiff in the sum of $8,200, and, being so indebted, died, leaving a last will and testament wherein he devised his real estate to his wife, Irene Moore, and his two children, Ephel W. Moore and Isaac W. Moore; that they, as such devisees, were indebted to said Jordan in the said sum' of $8,200, besides interest, and that they respectively were non-residents of this state and residents of the State of Pennsylvania. The writ required the sheriff to attach the lands of said devisees devised to them by the will of I. Whilden Moore, deceased. It appears, by stipulation, that I. Whilden Moore, at the time of his death, was resident in this state.

The Supreme Court, quoting the language of section 5 of

the Attachment act, that attachments may issue for the debt of a deceased debtor against his heir or devisee "in all cases in which the writ might have issued against such debtor immediately prior to his decease; and all real estate descended from or devised to him to the heir or devisee may be attached," held, that since in this case the debtor was at the time of his death a resident of this state, against whom a writ of this character could not lawfully issue, the statute did not authorize the issuance of such writ against his devisees.

In this we think the court erred.

The title of the act (as amended by *Pamph. L.* 1903, *p.* 70) is, "An act for the relief of creditors against absent, fraudulent and absconding debtors." In view of the provision of our constitution (article 4, section 7, placitum 4), that "Every law shall embrace but one object, and that shall be expressed in the title," it is entirely well established that the title forms a limitation upon the enacting clauses, and any construction of the latter that would give them a scope beyond the object expressed in the title is for this reason to be rejected. *Hendrickson* v. *Fries,* 16 *Vroom* 555, 563; *Dobbins* v. *Northampton,* 21 *Id.* 496, 499; *Cooper* v. *Springer,* 36 *Id.* 594, 597. The manifest purpose of the legislation respecting absent and absconding debtors is to enforce the obligations of defendants who are not within the reach of the ordinary process of our courts, by subjecting their property that is within the jurisdiction to the payment thereof. The construction of section 5 which was adopted by the Supreme Court would authorize the employment of the extraordinary process of attachment against defendants who were within the reach of the ordinary process of summons; and this merely on account of the circumstance that the original debtor from whom the land had been derived had happened to be a non-resident or absconding debtor. This seems to us as inconsistent with the reason of the matter as it is with the title of the act.

An examination of the history of the enactment in question shows that it was not intended to have any such effect.

The act of March 7th, 1797, "for the relief of creditors against heirs and devisees" (*Pat. L., p.* 243; 2 *Comp. Stat., p.*

2739), authorized an action to be maintained against the heirs and devisees of a deceased debtor. As has been repeatedly pointed out, and most recently in the opinion of this court in *McCarthy* v. *Mullen, ante p.* 379, the form of remedy afforded by the act (saving where the lands have been aliened by the heir or devisee before suit brought) is in effect an action at law to enforce a lien for the debt upon the lands descended or devised, without personal liability except for false pleading or the like.

The original "Attachment act" was passed March 8th, 1798 (*Pat. L., p.* 296), but contained no express authorization of procedure against the property of absconding or non-resident heirs or devisees; and in *Peacock* v. *Wildes,* decided by the Supreme Court in 1825 (3 *Halst.* 179), it was held that a writ of attachment could not be sued out against them, because by the policy and plain language of the Attachment act the defendant could dissolve the attachment only by coming in and filing special bail, which could not properly be required of an heir when sued for the debt of his ancestor. It was held in *Jeffrey* v. *Wooley* (1828), 5 *Id.* 123, that a foreign attachment could issue only for a cause of action founded on a liquidated demand such as would entitle the plaintiff, under the then existing practice, to require bail in ordinary actions upon the filing of the common affidavit. And in 1838 the same court held, in *Pullinger* v. *Van Emburgh,* 1 *Harr.* 457, that a female debtor could not be proceeded against by writ of attachment because by an act of 1818 she was exempted from imprisonment for debt. This last decision led to the enactment of a supplement in the following year which provided, *inter alia,* that writs of attachment might be issued against any absconding or absent female "in all cases in which such writ may lawfully issue against an absconding or absent male, any law, usage or custom to the contrary notwithstanding." *Pamph. L.* 1839, *p.* 63. In the Revision of 1846 this provision was included as section 43 (*Rev.* 1847, *p.* 59), and the want of a remedy by foreign attachment in the case of an action under the "heirs and devisees act" was supplied by inserting in the Attachment

act, section 44, viz., "That the writ of attachment may be issued against the heir or devisee of any deceased debtor in all cases in which the writ might lawfully have been issued against such debtor in his lifetime; and all lands, tenements, hereditaments and real estate descended from or devised by such deceased debtor to the heir or devisee against whom the attachment is issued may be attached and taken by virtue of the said writ."

In *Edwards* v. *McClave*, 16 *N. J. L. J.* 16, it was held at circuit by the late Judge Depue (afterwards Chief Justice) that the meaning of section 44 was that the writ of foreign attachment might be issued against the non-resident heir or devisee of a deceased debtor. In the later case of *Goldmark* v. *Magnolia Metal Co.,* 36 *Vroom* 341, 344, the Supreme Court held (Chief Justice Depue writing the opinion) that in section 43 of the revised act of 1846 the words "in all cases in which such writ may lawfully issue against an absconding or absent male," had relation to the character of the debt for which the writ should issue.

And so, in the present section 5, which declares that "Attachments may issue for the debt of a deceased debtor against his executor, administrator, trustee, heir or devisee in all cases in which the writ might have issued against such debtor immediately prior to his decease, and all real estate descended from or devised by him to the heir or devisee may be attached," it is quite plain, as we think, that the legislature intended that the writ should issue when the heirs or devisees were non-residents of this state, to the end that real estate situate within this state which had descended from or was devised by the original debtor might be attached.

The other grounds relied upon in the Supreme Court and urged here by counsel for the defendants in error furnish no adequate support for the judgment that is under review. They require no particular mention.

The judgment under review should be reversed and the record remitted for further proceedings to be had under the writ of attachment in accordance with the established practice in such cases.

*For affirmance—*None.

*For reversal—*THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, VOORHEES, KALISCH, BOGERT, VREDENBURGH, VROOM, CONGDON, WHITE, JJ.   12.