SECURITY NAT. BANK OF DALLAS v. FARMERS' EDUCATIONAL & CO-OP. WAREHOUSE CO. (No. 561.)

(Court of Civil Appeals of Texas. El Paso. April 20, 1916.)

1. WAREHOUSEMEN ☞3—STATUTORY REGULATIONS—"PUBLIC WAREHOUSEMAN."

Under the warehouse act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 7819–7827) the fact that one is a public warehouseman within the ordinary meaning of those terms is not sufficient to invest him with the character and rights and charged with the duties and responsibilities incident to public warehousemen and warehouses defined in the act.

[Ed. Note.—For other cases, see Warehousemen, Cent. Dig. § 4; Dec. Dig. ☞3.

For other definitions, see Words and Phrases, First Series, Public Warehouseman.]

2. WAREHOUSEMEN ☞16—RECEIPTS—NEGOTIABILITY.

A lender receiving, as security for his loan, cotton warehouse receipts, not knowing of a prior mortgage on the cotton, cannot on nonpayment of the loan hold the warehouseman liable for the amount thereof, although the warehouseman is a public warehouseman and the receipts are not indorsed "nonnegotiable" or "not a public warehouse receipt," where the warehouseman is not operating under Vernon's Sayles' Ann. Civ. St. 1914, arts. 7819–7827, the public warehouse act, and the receipts show that they are not in the form prescribed by that act.

[Ed. Note.—For other cases, see Warehousemen, Cent. Dig. § 35; Dec. Dig. ☞16.]

Appeal from District Court, Knox County; J. A. P. Dickson, Judge.

Action by the Security National Bank of Dallas against the Farmers' Educational & Co-operative Warehouse Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Leake & Henry, of Dallas, and Glasgow & Kenan, of Seymour, for appellant. Milam & Wheat, of Seymour, Jas. A. Stephens, of Benjamin, and J. S. Kendall, of Munday, for appellee.

HIGGINS, J. On November 2, 1914, Geo. F. Thompson executed and delivered to appellant his promissory note in sum of $480,

and on November 7, 1914, another note, in sum of $780. To secure the payment of these notes he delivered to appellants 31 receipts issued by appellee to G. McD. Gamble. Each receipt was for one bale of cotton. A copy of one of the receipts reads:

"Receipt No. 121.

"Munday, Texas, 10/26/1914.

"Received of G. McD. Gamble of ———, county of Knox, state of Tex. Cotton for storage in warehouse of undersigned as follows:

| Number | Marks | Weight | Class. |
|--------|-------|--------|--------|
| 561 | GD. | 536 | st. M. |

"Charges: Storage, 10c per bale per month. Insurance, 25c per bale per month, classing 10c per bale. Drayage 10c per bale, weighing, 10c per bale.       Farmers' Union Warehouse Co.,

"R3.                 By W. E. Gray, Mngr."

Indorsed:

"G. McD. Gamble."

The other receipts are of the same tenor and effect except as to numbers, marks, weights, and classifications. The 31 bales of cotton covered by these receipts were incumbered by a mortgage executed by Gamble to the First National Bank of Goree dated December 30, 1913, filed for record January 1, 1914. In the district court of Knox county on March 24, 1915, a decree of foreclosure was entered in favor of the First National Bank of Goree against Gamble, Security National Bank of Dallas, Farmers' Educational & Co-operative Warehouse Company and others, foreclosing its mortgage upon aforesaid 31 bales of cotton. Thereafter the present suit was filed by appellant against the appellee seeking to recover the 31 bales of cotton or its value to the extent of the balance due upon the Thompson notes. From an adverse judgment, the Security National Bank of Dallas prosecutes this appeal, and in support of its contention that it is entitled to the relief which it sought asserts this proposition:

"Warehouse receipts issued in October, 1914, by a corporation engaged in operating a public warehouse, which said receipts covered cotton stored in the warehouse issuing the receipts subject to a prior mortgage, but which receipts when issued contained no information or notice of such mortgage, where not stamped or written across their face 'Not Negotiable,' or did not have on their face the words 'Not a Public Warehouse Receipt,' render the warehouseman issuing such receipts responsible to any legal owner or holder of the receipts acquiring the same for a valuable consideration in due course of trade without knowledge of the existence of the said mortgage on the cotton for any damage which might be occasioned to the owner or holder of the said receipts without notice of the mortgage as a result of the existence of the mortgage upon the cotton."

Appellee was incorporated in 1907. During the year 1914 it did a general cotton storage business in the town of Munday, receiving for storage cotton from the general public, making charges therefor. As such it received from Gamble 31 bales of cotton and issued the receipts to cover the same as indicated above. Appellee made no effort to comply and did not in any wise comply with the provisions of chapter 37, First Called Session of Thirty-Third Legislature, providing for a system of public warehouses. Vernon's Sayles' R. S. 1914, title 131, articles 7819 to 7827, inclusive. Its warehouse was not controlled, conducted, or managed in accordance with the provisions of such act.

A public warehouseman and public warehouse, within the meaning of the act noted, is thus defined in the first section thereof:

"All persons, firms, companies or corporations who shall receive cotton * * * in store for hire, under the provisions of this act, shall be deemed and taken to be public warehousemen; and all warehouses which shall be owned or controlled, conducted and managed in accordance with the provisions of this act, shall be deemed and taken to be public warehouses. * * *"

[1] Obviously, upon the facts stated, appellee was not a public warehouseman and its warehouse was not a public warehouse within the purview of the act which appellant invokes. The major premise upon which its contention rests is not well taken. The fact that it was a public warehouseman within the ordinary meaning of those terms was not sufficient to invest it with the character and rights and charged with the duties and responsibilities incident to public warehousemen and warehouses as defined in the act. Only those persons fall within its purview who receive property in store for hire, under the provisions of the act, and only those warehouses which are owned or controlled, conducted, and managed in accordance with such provisions. The first section is plain, but if there could be any doubt in respect thereto, it is relieved by section 9 of the act (article 7827, Vernon's Sayles' R. S.) which reads:

"Nothing in this law shall be construed to apply to private warehouses or to the issue of receipts by their owners or managers under existing laws, or to prohibit public warehousemen from issuing such receipts as are now issued by private warehousemen under existing laws: Provided, that such private warehouse receipts issued by public warehousemen shall never be written on a form or blank indicating that it is issued from a public warehouse, but shall, on the contrary, bear on its face, in large characters, the words 'Not a Public Warehouse Receipt.'"

[2] It is true the receipts issued in this case did not have indorsed upon their face the words "Not a Public Warehouse Receipt" as provided by this section and did not bear the indorsement "Not Negotiable," as is elsewhere provided in the act, but such omissions cannot charge appellee with the responsibilities attaching to warehousemen and warehouses operating under the act. A most superficial inspection of the receipts would disclose that they did not comply with the fourth, fifth, sixth, and seventh sections of the act prescribing form of receipts to be issued by public warehousemen and warehouses, and upon their face thus bear unmistakable evidence of the fact that they were not the receipts of a public warehouse operating under the statute. And as to negotiability, they are obviously not of that character, and the failure to bear the indorse-

ment "Not Negotiable" is unimportant. The receipts being patently not those of a public warehouse operating under the statute and not negotiable instruments, the failure to make the indorsements indicated is of no consequence and confers no right of action upon appellant.

Affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes