## TRADERS COMPRESS CO. v. PRECURE.

No. 14785—Opinion Filed Oct. 7, 1924.

Rehearing Denied Dec. 16, 1924.

(Syllabus.)

**1. Warehousemen—"Public Warehouses"— Cotton Compresses—Statute.**

It is only those persons, firms, companies or corporations who have complied with the provisions of article 2, ch. 91, Comp. Stat. 1921, or those compresses storing cotton for a specified term, and not milling in transit, which are by such statutory provisions constituted public warehousemen or public warehouses.

**2. Same—Duty to Keep Stored Goods Insured.**

Sections 11113 and 11112, Comp. Stat. 1921, requiring a warehouseman to keep stored goods insured for the benefit of the owner thereof, apply only to public warehousemen as defined by the statute, and have no application to private warehousemen.

**3. Same—Uniform Receipts Act—Negligence—Burden of Proof.**

The Uniform Warehouse Receipts Act (art. 3, ch. 91, Comp. Stat. 1921), deals only with the rights, duties, and liabilities of the parties under the contract of bailment as embodied in the warehouse receipt. The act does not deal with the burden of proof in actions sounding in tort, or with the law of negligence, and has not modified the rules at common law in cases founded on negligence.

**4. Same—Extent of Liability.**

By the provisions of the Uniform Warehouse Receipts Act, the warehouseman is made liable for any loss or injury to stored goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he is not rendered liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of reasonable care; and if he fails or refuses to deliver the goods in compliance with a proper demand by the depositor or holder of the warehouse receipt, the burden is upon him to establish the existence of a lawful excuse for such failure or refusal.

**5. Same—Action by Bailor—Defenses.**

In an action by the owner against a warehouseman upon a contract of bailment for the recovery of goods stored, or their value, the warehouseman must excuse his failure to deliver the goods in compliance with the contract: this he may do by showing that the goods were lost and that the loss was due to causes consistent with due

care on his part. In such case, where the plaintiff has proven the bailment, a tender of all charges, a demand for the goods, and the warehouseman's failure or refusal to return, a prima facie case has been made out, and it is then incumbent upon the warehouseman to overcome this prima facie case, by showing that the goods have been lost, and that he exercised due care to prevent such loss.

**6. Same—Negligence—Proof.**

Where the owner of stored goods elects to found his cause of action upon the negligence of the warehouseman, instead of upon the contract of bailment, he must recover, if at all, upon proof of the negligence alleged.

Error from Superior Court, Pottawatomie County; Leander G. Pitman, Judge.

Action by O. K. Precure against the Traders Compress Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Ames, Lowe & Richardson, Burford, Miley, Hoffman & Burford, and Abernathy & Howell, for plaintiff in error.

Goode & Dierker and Kittie C. Sturdevant, for defendant in error.

NICHOLSON, J. On November 11, 1921, the cotton compress of the Traders Compress Company at Shawnee, together with about 9,000 bales of cotton, was destroyed by fire. Of this cotton so destroyed, O. K. Precure was the owner of seven bales, which was stored with the compress company, and this action was brought by him, as plaintiff, against the compress company, as defendant, to recover the value of said cotton, which it was stipulated at the trial was 12½ cents per pound, amounting to $461.25.

The plaintiff, in his petition, alleged, in substance, that the defendant was a warehouseman of his cotton; and its destruction by fire while in the custody of the defendant; and based his right of recovery upon the alleged failure of the defendant to insure said cotton for the full value thereof for plaintiff; and upon other alleged acts of negligence on the part of the defendant, in certain particulars, as to the construction of the warehouse, in not providing sufficient equipment and apparatus for extinguishing fires, and insufficient number of watchmen in the nighttime. The defendant answered, denying these allegations, and pleaded other defenses. The reply was a general denial.

The cause was tried to a jury and resulted

in a verdict in favor of the plaintiff for the sum of $461.25, to review which this proceeding in error is prosecuted.

Numerous assignments of error are presented, but they all lead to the inquiry of whether the defendant owed the plaintiff the duty of insuring, for his benefit, against loss or damage by fire, the cotton stored with it by him, and whether there was sufficient competent evidence of negligence on the part of the defendant to support the verdict and judgment against it.

At common law, in the absence of an agreement expressed or implied, a warehouseman is under no duty to keep stored goods insured. 40 Cyc. 432. There was no allegation or proof of such an express agreement, nor proof of facts from which such an agreement could be implied; hence, if the duty to insure rested upon the defendant, it must have been placed there by statute.

The first legislation pertaining to warehouses and warehousemen was passed by the Legislature of 1907-8, and appears as sections 11106 to 11116, inclusive. Comp. Stat. 1921. Said section 11106 provides that:

"All persons, firms, companies or corporations incorporated under the laws of Oklahoma who shall receive cotton, or broom corn, under the provisions of this article, shall be deemed and taken to be public warehousemen, and all warehouses which shall be owned or controlled, conducted and managed in accordance with the provisions of this article, shall be deemed and taken to be public warehouses. * * *"

Section 11113, supra, requires the owner of each public warehouse for storage of cotton and broom corn to carry insurance on cotton and broom corn against loss by fire equal in amount to the value of 50 per cent. of the actual capacity of said warehouse, and in case of loss, to pay when collected to each holder of a receipt three-fourths of the market value of his cotton or broom corn as shown by said receipt on the date said cotton or broom corn was destroyed.

Section 11116, supra, provides that nothing in the act contained shall apply to private warehouses.

In 1915, the Legislature passed an act entitled: "An act to make uniform the law of warehouse receipts." Session Laws 1915, page 668 (secs. 11123 to 11183, inclusive, Comp. Stat. 1921.)

Section 11143, supra, renders a warehouseman liable for any loss or injury to the goods caused by his failure to exer-

cise such care in regard to them as a reasonably careful owner of similar goods would exercise; and section 11149, supra, gives the warehouseman a lien for all lawful claims for money advanced, interest, insurance, transportation, labor, weighing, coopering, and other charges and expenses in relation to such goods, but these provisions impose no duty upon a public warehouseman to insure stored goods against loss or damage by fire. The section of the statute which gives a lien was merely intended to be for the protection of a warehouseman where he procures insurance in accordance with an agreement with the owner so to do, and puts the expenses of such insurance upon the same standing as the charges for storage. Farmers' Union Warehouse Co. v. Sturdivant. 127 Ark. 453, 192 S. W. 377.

The next legislation upon the subject is contained in sections 11117 to 11122, inclusive, Comp. Stat. 1921, which is the act of the Legislature approved April 5, 1919, entitled: "An act defining public warehouses and warehousemen and prescribing duties, and declaring an emergency". Section 1 of this act (sec. 11117 of the Statutes) provides that all persons, firms, companies, or corporations, who shall receive cotton, tobacco, wheat, oats, rice or any kind of produce. wares, merchandise of any description, or personal property in store for hire under the provisions of this act, shall be deemed and taken to be public warehousemen, and all warehouses which shall be owned or controlled and managed in accordance with the provisions of this act shall be deemed and taken to be public warehouses, etc.

Section 2 of the act (section 11118 of the Statutes) requires the owner, proprietor, lessee, or manager of any public warehouse. before transacting any business in such public warehouse, to procure from the county clerk of the county in which the warehouse is situated a certificate that he is transacting business as a public warehouseman under the laws of the state of Oklahoma, and such certificate shall give authority to carry on and conduct the business of a public warehouse within the meaning of the act, and the person receiving such certificate shall file with the county clerk granting the same a bond payable to the state of Oklahoma in the sum of $5,000, conditioned for the faithful performance of his duty as a public warehouseman.

By section 3 of the act (section 11119 of the Statutes), a warehouse commission was created, whose duty it was to supervise the bonded warehouses of the state; and sec-

tion 4 of the act (section 11120 of the Statutes) conferred upon the warehouse commissioners the authority to establish a public or state warehouse under the regular fee system at all points having compresses, and provided that all compresses storing cotton for a specified term, and not milling in transit should be known as a public warehouse, and the same rules and regulations shall apply to it as to any other bonded warehouse.

Section 6 of the act (section 11122 of the Statutes) provides that:

"All business firms, companies or corporations who shall receive products for storage, shall carry a sufficient amount of insurance at all times to cover all products stored."

It will be observed that sections 1 and 2 of the Act of 1907-8 (sections 11106 and 11107 of the Statutes) and sections 1 and 2 of the act of 1919 (sections 11117 and 11118 of the Statutes) are in substantially the same language; the only material difference being that the former refers only to the storage of cotton and broom corn, while the latter refers to cotton, tobacco, wheat, oats, rice and all kinds of produce, wares, merchandise of any description or personal property. The same definition of a public warehouseman is contained in each act, and the procedure provided for obtaining a certificate giving authority to transact business as a public warehouse is the same in each act. The Act of 1907-8 provides that nothing therein contained shall be construed to apply to private warehouses or to the issuance of receipts by their owners or managers under existing laws, provided, that no private warehouse receipt issued by a public warehouseman shall be written on a form blank indicating that it is issued from a public warehouse, but shall bear on its face in large characters the words: "Not a Public Warehouse Receipt," and requires the owner of each public warehouse for the storage of cotton and broom corn to carry insurance against loss or damage by fire in an amount equal to the value of 50 per cent. of the actual capacity of said warehouse; while the Act of 1919 contains the language above quoted pertaining to insurance.

The Act of 1907-8 recognizes the existence of private warehouses by expressly providing that nothing therein contained shall apply to them. Therefore, it is clear that under the provisions of that act, any person, firm, or corporation may engage in the business of storing cotton and broom corn without becoming a public or bonded warehouse. The Act of 1919 contains the same definition

of a public warehouseman as that contained in the Act of 1907-8, which is that all persons, firms, companies, or corporations who shall receive cotton, etc., in store for hire **"under the provisions of this act"** shall be deemed and taken to be public warehousemen. This act does not limit or attempt to limit the business of storing cotton for hire to public warehousemen, and there is nothing in the statute requiring those storing cotton for hire to qualify as public warehousemen. This being true, it is apparent that any one may engage in business as a private warehouseman. It is optional with a warehouseman whether he engages in the business under the provisions of the statute, and thereby obtain the advantages afforded, and subject himself to the duties and liabilities incident to a public warehouseman.

In Security National Bank of Dallas v. Farmers' Educational & Co-Op. Warehouse Co., 185 S. W. 649, the Court of Civil Appeals of Texas. in construing the Warehouse Act of that state (chapter 37, First Called Session of Thirty-Third Legislature), which defines public warehouses and warehousemen in identically the · same language as that used in our act under consideration, uses the following language:

"A public warehouseman and public warehouse, within the meaning of the act noted, is thus defined in the first section thereof:

" 'All persons, firms, companies or corporations who shall receive cotton * * * in store for hire, under the provisions of this act, shall be deemed and taken to be public warehousemen; and all warehouses which shall be owned or controlled, conducted and managed in accordance with the provisions of this act, shall be deemed and taken to be public warehouses. * * *'

"Obviously, upon the facts stated appellee was not a public warehouseman and its warehouse was not a public warehouse within the purview of the act which appellant invokes. The major premise upon which its contention rests is not well taken. The fact that it was a public warehouse within the ordinary meaning of those terms was not sufficient to invest it with the character and rights and charged with the duties and responsibilities incident to public warehousemen and warehouses as defined in the act. Only those persons fall within its purview who receive property in store for hire. under the provisions of the act, and only those warehouses which are owned or controlled, conducted and managed in accordance with such provisions."

The defendant, not having complied with the statute, and not receiving cotton, etc., in store for hire under the provisions of the act under consideration, was not a public

warehouseman, nor its compress a public warehouse, unless it was rendered such by section 4 of the act (section 11120 of the Statutes) which provides:

" * * * and that all compresses storing cotton for a specified term, and not milling in transit, shall be known as a public warehouse, and the same rules and regulations shall apply to it as any other bonded warehouse."

The question of whether or not the character of the defendant's business was such as to bring it within the terms of this provision was one of fact, and the evidence seems to be undisputed that the defendant did not store cotton for a specified term, and that it did mill (compress) in transit. Hence, under this evidence, it was not a public warehouse within the provisions of the act, and the rules and regulations prescribed did not apply to it.

Section 6 of the act (section 11122 of the Statutes) cannot be construed as applying to private warehouses. While it is there provided that:

"All business firms, companies or corporations who shall receive products for storage shall carry a sufficient amount of insurance at all times to cover all products stored"

—yet this section must be read and construed in the light of the title of the act, which is: "An act defining public warehouses and warehousemen and prescribing duties." No mention is made in the act of others than public warehousemen and public warehouses. The entire act emphasizes the intention of the Legislature to regulate public warehouses as therein defined, and evinces no intention of regulating private warehouses.

Section 57, art. 5. of the Constitution provides that every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title. Under like constitutional provisions it has been universally held that the subject expressed in the title fixes a limit upon the scope of the act. Thayer v. Snohomish Logging Co. (Wash.) 172 Pac. 552; State v. Roby. 142 Ind. 168, 51 Am. St. Rep. 174; Jordan v. Moore (N. J.) 82 Atl. 850; Curtis & Hill Gravel Co. v. State Highway Commission (N. J.) 111 Atl. 16; Kuhn v. Thompson (Mich.) 134 N. W. 722; Inhabitants of Georgetown v. Hanscome & Co. (Me.) 79 Atl. 379; City of Pittsburg v. Reynolds, 48 Kan. 360. And this rule has been recognized by this court in Johnson v. Grady County. 50 Okla. 188, 150 Pac. 497. Therefore, section 6 of the act must be construed as applying only to public warehousemen as defined by the act, and can have no application to private warehousemen. We conclude that the defendant was not a public warehouseman within the purview of either the Act of 1907-8 or the Act of 1919, and that it owed plaintiff no duty of insuring the cotton stored with it. In view of this conclusion, it follows that the trial court erred to the prejudice of the defendant in submitting to the jury instruction No. 19, to the effect that it was the duty of all business firms, companies, or corporations who receive products for storage, to carry a sufficient amount of insurance at all times to cover all products stored, and erred in refusing to give to the jury instruction No. 2, requested by the defendant, which was, in substance, that the defendant was under no duty to insure plaintiff's cotton, if any, stored with it against loss or damage by fire while in its custody. Inasmuch as it was conceded by the defendant that it had not insured plaintiff's cotton, the instruction given was tantamount to a peremptory instruction for the plaintiff. The error in this regard necessitates a reversal of the judgment, and renders it unnecessary for us to comment upon the sufficiency of the evidence to establish the other acts of negligence alleged, and we decline to do so, but in view of the fact that another trial must be had, and in view of the contentions of the respective parties as to what they term the burden of proof under the Uniform Warehouse Receipts Act (secs. 11123 to 11183 of the Statutes), it is fitting that we express our views on this phase of the case.

Section 11130, Comp. Stat. 1921, provides in part:

"A warehouseman, in the absence of some lawful excuse provided by this act, is bound to deliver the goods upon demand made either by the holder of a receipt for the goods, or by the depositor. * * *

"In case the warehouseman refuses or fails to deliver the goods in compliance with the demand by the holder or depositor, * * * the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal."

And by section 11143. a warehouseman is rendered liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise. But he is not liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care.

At common law, a warehouseman was not liable as an insurer of the goods deposited, but was only liable for negligence or want of ordinary care in keeping and caring for the deposit, and if goods deposited were lost or stolen, there must have been some evidence of negligence or want of ordinary care on the part of the warehouseman, some dereliction of duty on his part in relation to the goods, in order to make him liable to the owner for their loss. Walker v. Eikleberry, 7 Okla. 599, 54 Pac. 553.

In Stone v. Case, 34 Okla. 5, 124 Pac. 960, which was decided before the Uniform Warehouse Receipts Act was passed, the trial court instructed the jury that the burden was upon the defendant, who was a bailee, to show that he exercised reasonable care in the protection of the property, and that the destruction of the same by fire was not due to his negligence. The giving of this instruction was held error; this court holding that when the bailor proved that he had, made a deposit with the bailee, had demanded the return of the goods deposited, and the bailee had failed or refused to return the same, the bailor had made a prima facie case, and the burden was then upon the bailee to establish his defense; that when it was shown that the property was destroyed by fire, the burden was then upon the bailor to show that the loss was occasioned by the bailee's negligence. And this was the holding in Standard Marine Ins. Co. v. Traders Compress Co., 46 Okla. 356, 148 Pac. 1019.

In Southern Railway Co. v. Prescott, 240 U. S. 632. 60 L. Ed. 836, it is said:

"As it is the duty of the warehouseman to deliver upon proper demand, his failure to do so without excuse, has been regarded as making a prima facie case of negligence. If, however, it appears that the loss is due to fire, that fact in itself, in the absence of circumstances permitting the inference of lack of reasonable precautions, does not suffice to show neglect, and the plaintiff, having the affirmative of the issue, must go forward with the evidence. Cau v. Texas & P. R. Co.. 194 U. S. 427, 432, 48 L. Ed. 1053, 1057, 24 Sup. Ct. Rep. 663, 16 Am. Neg. Rep. 659; Western' Transp. Co v. Downer, 11 Wall. 129, 135, 20 L. Ed 160, 161; Degrau v. Wilson, 17 Fed. 698. 700, 701, affirmed in 22 Fed. 560; Claflin v. Meyer, 75 N. Y. 260, 262, 263, 31 Am. Rep. 467; Whitworth v. Erie R. Co., 87 N. Y. 413, 419, 420; Draper v. Delaware & H. Canal Co., 118 N. Y. 122, 123, 23 N. E. 131; St. Louis, I. M. & S. R. Co. v. Bone, 52 Ark. 26, 11 S. W. 958; Lyman v. Southern R. Co., 132 N. C. 721, 44 S. E. 550; Lancaster Mills v. Merchant's Cotton-Press & Storage Co., 89 Tenn. 1. 24 Am. St. Rep. 586, 14 S. W. 317; National Line S. S. Co. v. Smart, 107 Pa. 492; Denton v. Chicago, R. I. & P. R. Co.. 52 Iowa, 161, 35 Am. Rep. 263, 2 N. W. 1093; Cox v. Central Vermont R. Co., 170 Mass. 129, 49 N. E. 97; Yazoo & M. Valley R. Co. v. Hughes, 94 Miss. 242, 22 L. R. A. (N. S.) 975, 47 South. 662 24 Am. Dec. 150-153, note; 22 L. R. A. (N. S.) note pp. 975-980.''

Therefore, irrespective of the statute, it was the duty of the warehouseman to establish a lawful excuse for his failure to deliver the goods upon demand, and by the great weight of authority, if it appeared that the warehouseman was unable to deliver the stored goods because of their destruction by fire, the fact that they were destroyed by fire did not in itself, in the absence of circumstances permitting the inference of lack of reasonable precaution, suffice to show negligence on the part of the warehouseman, but the plaintiff, bailor, had the burden of proving negligence.

Section 11143, Comp. Stat. 1921, making the warehouseman liable for all loss or injury to goods caused by his failure to exercise such care in regard thereto as a reasonably careful owner of similar goods would exercise, is merely declaratory of the common law. H. J. Keith Co. v. Booth Fisheries Co. (Del.) 87 Atl. 715; Buffalo Grain Co. v. Sowerby' (N. Y.) 88 N. E. 569; Mortimer v. Otto (N. Y.) 99 N. E. -89. The statute places no greater burden upon warehousemen than already existed at the common law, and under the common law he was not liable in the absence of an agreement to the contrary for any loss or injury to the goods which could not have been avoided by the exercise of ordinary care. So the inquiry is, what constitutes a lawful excuse under the provisions of the act? Whether it is a sufficient excuse for the bailee to show that the goods were destroyed by fire, or whether he must go further and show that their destruction was not occasioned by any negligence on his part.

The Uniform Warehouse Receipts Act has been adopted by practically every state in the Union, and there is some contrariety of opinion on the question under discussion. The Supreme Court of Tennessee in Noel & Co., v. Schuur, 204 S. W. 632, said:

"This act prescribes the measure of care to be observed in the keeping of goods— that of a reasonably careful owner of similar goods. Section 3608 a 20.

"The act does not deal with the burden of proof, the making of a prima facie case of negligence on the part of the warehouseman, or with presumptions of negligence, and common-law principles in relation thereto must find application."

And after discussing the case of Holt Ice & Cold Storage Co. v. Arthur Jordan Co., 25 Ind. 314, 57 N. E. 575, in which it was held that where goods were delivered to the bailee in good condition and returned in a damaged condition produced by a cause not inherent in the goods themselves, the burden was on the warehouseman to account for the injury in some manner consistent with the exercise of ordinary care, the court said:

"Cases involving loss by fire or theft while the property was in the custody of a bailee or warehouseman are not within this rule, unless there is something other than the mere fact of the fire or theft from which negligence may be inferred. The bailor must in such cases prove that the fire was due to negligence. Lancaster Mills v. Merchant's Cotton Press & S. Co., 89 Tenn. 1, 14 S. W. 317, 24 Am. St. Rep. 586, and note 43 L. R. A. (N. S.) 1178; 3 R. C. L. p. 151."

In Wilson v. Christal, 176 N. Y. Supp. 341, the Supreme Court of New York, in discussing the statute, said:

"The plaintiff established a prima facie case by proving the bailment of the trunk and refusal or failure to deliver it with its contents. The burden then rested upon the defendant to establish the existence of a lawful excuse for such refusal (General Business Law [Consol. Laws, c. 20] sec. 95), for an unexplained refusal or failure to deliver upon demand is evidence of a neglect of duty, which unexplained and unexcused gives a right of action (Golden v. Romer, 20 Hun. 438). When the failure to deliver is shown, a prima facie case of negligence is made out. Herrman v. New England Nav. Co., 143 App. Div. 551, 128 N. Y. Supp. 380. The burden of an explanation is then upon the defendant and that burden is satisfied if he shows that the goods were stolen. (Claflin v. Meyer, 75 N. Y. 260, 31 Am. Rep. 467. The burden is then upon the plaintiff of showing that the negligence of the warehouseman contributed to the theft. Claflin v. Meyer, supra."

In Scott v. Sample, 87 South. 478, the Supreme Court of Louisiana, on rehearing, stated the rule as follows:

"It is true, as shown by the authorities cited by plaintiff (Sea Ins. Co. v. V. S. & P. Ry. Co., 159 Fed. 676, 86 C. C. A. 544, 17 L. R. A. [N. S.] 925; Nichols v. Roland. 11 Mart. [O. S.] 190; Schwartz, Kaufman & Co. v. Beer, 21 La. Ann. 601; Thomas v. Darden, 22 La. Ann. 413; and Gibbons v. Railway Co., 130 La. 671, 58 South. 505), that where a bailee fails to return property intrusted to his care, he bears the burden primarily of showing why he has failed to do so. But, when he has shown that the cause was due to destruction of the bailed goods by fire, the burden again shifts to the shoulders of the bailor to show that the fire (contrary to the case of a common carrier, innkeeper, etc.) was caused by the bailee's negligence. McCullom v. Porter, 17 La. Ann. 89; 40 Cyc. p. 473, verbo 'warehousemen.' "

While the Uniform Warehouse Receipts Act is not mentioned in the opinion, the loss occurred in 1915, and the act had been adopted in 1908, so it is but reasonable to presume that the court had the act in mind in delivering the opinion.

The Uniform Warehouse Receipts Act was adopted by the state of Washington in 1913, and in Firestone Tire & Rubber Co. v. Pacific Transfer Co., 208 Pac. 55, the Supreme Court of that state, in considering the burden of proof as to negligence in a case where the goods had been stolen, while not referring specifically to the act, held that under ordinary circumstances the mere fact that goods in storage were stolen no more shows negligence than the fact that in a personal injury case the plaintiff was injured while in the employ of the defendant shows negligence on the part of the defendant, and the burden was on the plaintiff to show that the theft of its goods was the result of some negligent act of the defendant. This rule was adhered to in Atwood v. Southern Cal. Ice Co. (Cal.) 218 Pac. 283, but the act was not there referred to. To the same effect is Hansen v. Oregon-Washington R. & Nav. Co. (Ore.) 188 Pac. 963.

In Grady v. Blue Line Transfer & Storage Co., 190 N. W. 375, the Supreme Court of Iowa, in construing the section of the act identical with section 11143 of our Statutes, says:

"Under Code Supp. 1913, par. 3138 a 21, making a warehouseman in the absence of an agreement to the contrary, liable for loss or injury to goods, only where caused by failure to exercise ordinary care, an owner, who sues a warehouseman for damages to stored goods, has the burden of proving that the damage resulted from the failure of the warehouseman to exercise such care."

Those cases holding that the burden is upon the bailee to show that the injury or loss was not due to any negligence on his part are: Caldwell v. Skinner (Kan.) 164 Pac. 1166; Fleischman et al. v. Southern Ry. Co. (S. C.) 56 S. E. 974, 9 L. R. A. (N. S.) 519; Leckie v. Clemens (Md.) 108 Atl. 684; Beck v. Wilkin-Ricks Co. (N. C.) 102 S. E. 313. In Caldwell v. Skinner, supra, the court, after quoting that section of the statute identical with section 11130 of our Statutes, said:

"Under the statute, if it be shown that

goods were delivered to the warehouseman in good condition and destroyed, lost, or returned in a damaged condition, it then devolves upon him to acquit himself of negligence; that is, to show a lawful excuse for his failure or refusal to deliver the goods in compliance with the demand. Doubtless the Legislature considered that the warehouseman who had control of the premises and the goods intrusted to his care was better situated than the depositor to know the facts and circumstances under which the destruction, loss, or damage occurred, and is best able to prove them."

In Fleischman v. Southern Ry. Co., supra, the court did not base its opinion upon the provisions of the statute, but followed the rule long prevailing in that state, and said:

"The rule in this state, as indicated by the cases above referred to, is that the bailor must prove delivery to the bailee and his refusal to return as required by the contract of bailment. The burden is then on the bailee to prove that he has not converted the property, and this he may do by showing its loss and the manner of its loss; but by the manner of loss is meant, not only the isolated fact of destruction by fire, or loss by theft or otherwise, but the circumstances connected with the origin of the fire or other cause of loss or injury as far as known to the bailee, and the precautions taken to prevent the loss or injury. From these facts, coupled with any testimony on the subject the bailor may introduce, it is for the jury to say whether the bailee was negligent. This rule is entirely reasonable. The facts surrounding the loss, particularly the precautions taken against it, are usually known to the bailee, or ascertainable by him. On the other hand, the owner of the property cannot be supposed to know the details of a warehouseman's business, for he is often hundreds of miles away. With the great modern development of the warehouse business, we venture to think the injustice of the rule which exempts a warehouseman from responsibility to the owner on the bald proof of loss or injury to the goods by fire, theft, or otherwise, will become more and more apparent. In most cases, to require the owner to assume the burden of showing that the fire or theft was due to the lack of ordinary care is to impose an impossible task and place him more than ever at the mercy of the warehouseman. We are satisfied, therefore, to adhere to the somewhat exceptional rule laid down in this state, notwithstanding the great number of opposing authorities in other jurisdictions."

In Leckie v. Clemens, supra, the court after stating that the rule in that jurisdiction prior to the adoption of the Uniform Warehouse Receipts Act was in accordance with the weight of authority, i. e., that the burden was upon the bailor to show that the

loss sustained by him was caused by the negligence of the bailee, held that after the adoption of the act in 1910, the rule was changed, and in this connection said:

"It would therefore seem that the rule in this state, as now established, places upon the bailee the burden of proving due care, or overcoming the presumption of negligence. The goods are in the possession of the defendant or bailee, and usually upon his premises at the time the injury or loss occurs, and he knows, or is presumed to know, not only the condition of the premises, but also what is going on there in respect to such goods, and thus he is in a far better position to explain or account for their injury or loss than the bailor, who, generally speaking, has no such information, and at times cannot acquire it. In many cases the bailee might be guilty of the grossest negligence, and yet, because of the character of his exclusive possession and custody of the goods, it would be almost impossible for the bailor to show such negligence; while, on the other hand, the bailee, with the information ordinarily possessed by him, could show without difficulty in most cases that he had exercised proper care in respect to such goods, if such was the fact, and be relieved of all liability."

The decision was based on the case of Security Storage & T. Co. v. Denys, 119 Md. 330, 86 Atl. 613. While this case was decided after the adoption of the statute, the cause of action arose long prior to its adoption and the act is not referred to in the opinion. In that case the court uses the following language:

"The evidence tended to show that the goods, when delivered to the defendant, were in good condition and that some of them were redelivered in a bad condition and that others of them were lost. In such a state of facts, the law presumes negligence on the part of the bailee and throws upon him the burden of accounting for the condition of the property and of the missing articles. The reason for this rule is that, since the bailee is in the possession of the property when the injury or loss occurs, he ought to be in a better position to account for the condition or loss of the property than the bailor. 'We hold it to more reasonable rule,' said the court in Cumins v. Wood, 44 Ill. 416, 92 Am. Dec. 189, 'when the bailor has shown he stored the goods in good condition and they were returned to him in a damaged state, or not returned at all, that the law should presume negligence on the part of the bailee and impose on him the burden of showing he has exercised such care as was required by the nature of the bailment.' Hoeveller et al. v. Mayers et al., 158 Pa. 461, 27 Atl. 1081."

The cases of Caldwell v. Skinner and Leckie v. Clemens, supra, are the only cases

to which our attention has been called, or which we have been able to find, holding that under the Uniform Warehouse Receipts Act the burden is upon the bailee to free himself from negligence. The case of Fleischman v. Southern Railway Co., supra, made no reference to the act, but followed the rule as established in Wardlaw v. South Carolina R. Co., 11 Rich. (S.C.) 337, and followed in Brunson & Boatwright v. Atlantic Coast Line R. Co., 56 S. E. 538. The case of Beck v. Wilkin-Ricks Co., supra, does not refer to the act, but placed the burden upon the defendant of showing that it had discharged its duty of proper care while intrusted with the custody of plaintiff's automobile for repair.

We are not in accord with the views of those courts holding that where recovery is sought based on the negligence of the warehouseman, the statute has changed the rule as to the burden of proof, for the reason that the statute under consideration deals only with the rights, duties, and liabilities of the parties under the contract of bailment as embodied in the warehouse receipt. The act does not deal with the burden of proof in actions sounding in tort, or with the law of negligence, and nowhere evinces an intention on the part of the Legislature to in any manner modify the rules at common law in cases founded on negligence.

Under the statute, the warehouseman is made liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he is not rendered liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of reasonable care, and if he fails or refuses to deliver the goods in compliance with a proper demand by the depositor or holder of the warehouse receipt, the burden is upon him to establish the existence of a lawful excuse for such failure or refusal.

This statutory provision works no radical change either in the law or procedure. The universal rule is that if one be sued on a contract of any character executed by him, he must, in order to avoid liability, show a lawful excuse for his failure to perform. This is an affirmative defense, the burden of proving which is cast upon him, and the statute does no more than provide what shall constitute this affirmative defense in actions within its purview. Hence, if an action be brought by the owner against a warehouseman upon the contract of bailment for recovery of stored goods or their value, the

warehouseman must excuse his failure to comply with the contract; this he may do by showing that the goods were lost and that the loss was due to causes consistent with due care on his part. This has been held to be the rule irrespective of statute. 6 C. J. 1158. In such case, where the plaintiff has proven the bailment, a tender of all charges, a demand for the goods and the warehouseman's failure or refusal to return, a prima facie case has been made out, and it is then incumbent upon the warehouseman to overcome this prima facie case by showing that the goods have been lost, and that he exercised due care to prevent such loss.

On the other hand, if the holder of the receipt or depositor elects to found his cause of action upon the negligence of the warehouseman, instead of upon the contract of bailment, he must recover, if at all, upon proof of negligence as alleged. And where, as in this case, it is alleged that the loss was due to fire, and that the fire was the result of the defendant's negligence, the burden of proving such negligence is upon the plaintiff. This is the rule adhered to in Stone v. Case, supra, and Standard Marine Insurance Company v. Traders Compress Company, supra, and we are unwilling to depart therefrom. In Metropolitan Electric Service Company v. Walker et al., 102 Okla. 102, 226 Pac. 1042, it was held that in an action by a bailor against a bailee to recover property bailed, or its value allegation and proof of bailment, together with demand and refusal or failure to return, are ordinarily sufficient to make a prima facie case, but in such an action, where the bailor in his petition alleges the bailment and demand and refusal or failure to return, and in addition thereto alleges that the property bailed was lost by fire, theft, burglary, or some other cause ordinarily beyond the bailee's control, and that the loss was the result of the bailee's negligence, the burden is upon the bailor to prove negligence as alleged.

It has been quite generally held, as indicated by the authorities cited, supra, that as it is the duty of the warehouseman to deliver upon proper demand, his failure to do so without excuse is regarded as making a prima facie case of negligence, and the burden of an explanation of such failure is then on the defendant, but we confess our inability to see where this rule has any application to an action founded solely on the negligence of the defendant, as where the bailment is pleaded by way of inducement merely, and the gist of the action is the negligence of the defendant, for in such case

the plaintiff must of necessity plead and prove the loss or injury, as well as the acts of negligence causing the same. We are constrained to believe that in the cases cited the courts failed to make clear the destinction between actions on the contract of bailment and actions founded on negligence.

We are also unable to agree with those courts holding, irrespective of the statute, that in actions founded upon negligence the burden is upon the bailee to free himself from negligence. While the rule announced in Fleischman v. Southern Railway Co., supra, may, as stated in the opinion, be entirely reasonable, it is n ', in our opinion, in harmony with the weight of authority, or sound principles. Such rule is no more reasonable than would be a rule placing upon the defendant in an action for personal injury the burden of proving that the injury was not the result of his negligence, or placing the burden upon the defendant of freeing himself from negligence in any case where recovery is sought because of his negligence. This rule requiring the defendant to prove a negative has no place in this jurisdiction.

In the case at bar, it is difficult to determine whether the plaintiff attempted to include in his petition a cause of action on the contract of bailment, as well as one founded on the negligence of the defendant. He insists that the petition should be so treated, while the defendant contends that his allegations of the bailment, demand for the return of the property, and the defendant's refusal to return were pleaded only by way of inducement for the purpose of showing defendant's duty to exercise care, and as a predicate for alleging negligence, and that the action was one sounding in tort. This seems to have been the theory upon which the action was brought and tried, as the plaintiff did not seek a recovery upon the contract of bailment alone, but, in addition to alleging the bailment, demand and refusal to return, alleged that his cotton was destroyed by fire, and that the fire and consequent loss was the result of various acts of negligence on the part of the defendant.

If we give to the petition the effect contended for by the plaintiff, and construe it as pleading two separate causes of action, one on the contract, and one in tort, then the defendant met the allegations of both causes of action by pleading facts showing that it exercised due care in caring for the cotton, thereby pleading a defense to the action on the contract, and by denying that its compress and plaintiff's cotton were destroyed by fire through any negligence on

its part, it pleaded a defense to the cause of action in tort.

For the reasons stated, the judgment is reversed, and the cause remanded for a new trial.

HARRISON, JOHNSON, LYDICK, WARREN, and GORDON, JJ., concur.